*Nos. 22-16507, 22-16712*

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

THOMAS LIU, individually and on behalf of others similarly situated,

*Plaintiff-Appellant,*

v.

UBER TECHNOLOGIES, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Northern District of California
Case No. 20-cv-07499-VC

## DEFENDANT-APPELLEE UBER TECHNOLOGIES, INC.'S ANSWERING BRIEF

ANDREW M. SPURCHISE, Bar No. 245998
aspurchise@littler.com
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

SOPHIA BEHNIA COLLINS, Bar No. 289318
sbehnia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys for Defendant-Appellee
Uber Technologies, Inc.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant and Appellee, Uber Technologies, Inc. ("Uber") submits this Corporate Disclosure Statement.

Uber certifies the following listed parties may have a pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal:

Uber is a publicly held corporation with no parent company. Based solely on SEC filings regarding beneficial ownership of Uber's stock, Uber is unaware of any shareholder who beneficially owns more than 10% of Uber's outstanding stock.

Dated:  June 23, 2023

LITTLER MENDELSON, P.C.

*/S/ SOPHIA B. COLLINS*
Andrew M. Spurchise
Sophia Behnia Collins
Attorneys for Defendants and Appellee
Uber Technologies, Inc.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................11

II.   STATEMENT OF JURISDICTION ...................................................12

III.  COUNTER-STATEMENT OF THE ISSUES...............................13

IV.  COUNTER-STATEMENT OF THE CASE....................................14

  A.   Procedural History and Facts Relevant to the Dismissal of Liu's Operative Complaint.......................................................................................14

    1.   Liu's Allegations of Disparate Impact Discrimination............................14

    2.   The District Court's Dismissal of the SAC................................18

    3.   Liu's TAC and Order Dismissing the TAC with Leave to Amend .........21

  B.   Procedural History and Facts Relevant to the Dismissal of Liu's Claim for Disparate Treatment Discrimination....................................................25

V.   SUMMARY OF ARGUMENT ........................................................26

VI.  STANADARD OF REVIEW ..........................................................30

VII. ARGUMENT .................................................................................31

  A.   The District Court's Dismissal of Liu's Disparate Impact Discrimination Claim Should be Affirmed………………………………………………..31

    1.   To Plead a Disparate Impact Claim Using Survey-Related Allegations, the Survey Must Ask the Relevant Population a Relevant Question………..31

    2.   Liu Failed to Plausibly Allege a Significant Disparity Between Minority and White Drivers Whose Accounts were Deactivated Based on Star Ratings………………………………………………………………...34

a.     Liu Failed to Allege Facts Regarding a Representative Population Allowing for a Reasonable Inference of a Significant Disparity……………………………..…36

b.     Liu's Survey Asked the Wrong Question of the Wrong Population, and His Follow-Up Inquiry Only Made "Liu's Complaint Worse"…………………………..40

c.     Other Flaws in Liu's Survey Also Support the TAC's Dismissal………………………………………...43

d.     Liu Continues to Misunderstand the Survey's Deficiencies…………………………………………45

e.     Liu's Expert's Conclusions Based on Liu's Flawed Survey Do Not Plausibly Show a Significant Disparity…………………………………………48

3.   Liu's Allegations Regarding His Personal Experience are Not at Issue and are Insufficient to State a Disparate Impact Claim Nonetheless .............49

4.   The District Court Did Not Apply a Heightened Pleading Standard.......51

5.   Liu's Disparate Impact Claim Also Fails Because Liu Failed to Plausibly Allege Causation ...........................................................................55

6.   Dismissal Furthers Title VII's Purpose of Addressing Genuine Discrimination...............................................................................57

7.   The EEOC Fails to Establish a Basis for Reversing the District Court...60

a.     The EEOC Improperly Relies on Issues Not Raised By Liu on Appeal……………………………………..…60

b.     The EEOC's Arguments Lack Merit……………......62

1. The EEOC Misunderstands the District Court's Ruling and Misinterprets the Cases It Cites……..62

2. Liu's Allegations Regarding Publications and Possible Discrimination by Riders Are Insufficient to Plausibly Allege a Significant Disparity……...68

B.     The District Court's Correctly Dismissed Liu's Disparate Treatment Claim ....................................................................................71

C.     Liu Waived Any Right to Further Amend His TAC ..................................74

VIII.     CONCLUSION ..........................................................................74

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ambat v. City and County of San Francisco*,
757 F.3d 1017 (9th Cir. 2014) .......................................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................... ...................................*passim*

*Atonio v. Wards Cove Packing Co., Inc.*,
810 F.2d 1477 (9th Cir. 1987) .......................................................33

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................... ...................................*passim*

*Benavidez v. Cty. of San Diego*,
993 F.3d 1134 (9th Cir. 2021) ...............................................31, 43

*Boykin v. Fenty*,
650 F.App'x 42 (D.C. Cir. 2016)....................... ....................*passim*

*Carson v. Lacy*,
856 F.App'x 53 (8th Cir. 2021) ......................... .........................68

*Chaidez v. Ford Motor Co.*,
937 F.3d 998 (7th Cir. 2019) ......................... .............................54

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*,
626 F.3d 483 (9th Cir. 2010) ......................... .............................62

*Conservation Northwest v. Sherman*,
715 F.3d 1181 (9th Cir. 2013) ......................... ......................50, 61

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ......................... ......................31, 39

*Darensburg v. Metropolitan Transp. Com'n*,
636 F.3d 511 (9th Cir. 2011) ......................... ......................*passim*

*Davis v. Valley Distributing Co.*,
522 F.2d 827 (9th Cir. 1975) ......................... .............................58

*Frappied v. Affinity Gaming Black Hawk, LLC*,
966 F.3d 1038 (10th Cir. 2020) ............................. ..............................39, 44, 63, 65

*Freyd v. Univ. of Oregon*,
990 F.3d 1211 (9th Cir. 2021) ........................ ......................................53

*Jimenez v. Allstate Ins. Co.*,
2019 WL 13088814 (C.D. Cal. 2019) ................... ................................................44

*Lee v. Herz Corp.*,
330 F.R.D. 557 (N.D. Cal. 2019) ........................ ................................................68

*Mahroom v. Hook*,
563 F.3d 1369 (9th Cir. 1977) ........................ ................................................58

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020) ............................. ................................................*passim*

*Meyer v. Bear Rd. Assocs.*,
124 F.App'x 686 (2d Cir. 2005) ........................ ................................................68

*Moussouris v. Microsoft Corp.*,
2016 WL 6037978 (W.D. Wash. 2016) .................. .................................32, 53, 54

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
15 F.4th 885 (9th Cir. 2021) ........................ ................................................30

*Nat'l Fair Hous. All. v. Travelers Indem. Co.*,
261 F.Supp.3d 20 (D.D.C. 2017) ........................ .......................................66, 67

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2011) ........................ ................................................30

*Pirani v. Slack Technologies, Inc.*,
13 F.4th 940 (9th Cir. 2021) ........................ ................................................31

*Police Officers for Equal Rts. v. City of Columbus*,
644 F.Supp.393 (S.D. Ohio 1985) ........................ ......................................73

*Ramirez v. National Distillers and Chemical Corp.*,
586 F2d 1315 (9th Cir. 1978) ........................ ................................................58

*Reyes v. Waples Mobile Home Park Limited Partnership*,
903 F.3d 415 (4th Cir. 2018) .................................... ...................................*passim*

*Rose v. Wells Fargo Bank, N.A.*,
902 F.2d 1417 (9th Cir. 1990) ..................... ...............................................33

*Sekiya v. Gates*,
508 F.3d 1198 (9th Cir. 2007) ..................... ...............................................61

*Silveria v. Koehn*,
2021 WL 5277080 (9th Cir. 2021) ..................... ...........................................62

*Sirko v. Int'l Bus. Mach. Corp.*,
2014 WL 4452699 (C.D. Cal. 2014) .................... ..........................................44

*Smith v. Xerox Corp.*,
196 F.3d 358 (9th Cir. 1999) ..................... ....................................33, 55, 59

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..................... ....................................31, 45, 55

*Stevens v. Plumbers and Pipefitters Local 219*,
812 F.App'x 815 (11th Cir. 2020) ..................... .........................................74

*Swan v. Peterson*,
6 F.3d 1373 (9th Cir.1993) ..................... .................................................62

*Unified Data Services, LLC v. Federal Trade Commission*,
39 F.4th 1200 (9th Cir. 2022) ..................... .............................................74

*Western Watersheds Project v. Abbey*,
719 F.3d 1035 (9th Cir. 2013) ..................... .............................................62

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ..................... .............................................30

*Wood v. City of San Diego*,
678 F.3d 1075 (9th Cir. 2012) ..................... ...............................*passim*

**State Cases**

*Duran v. U.S. Bank Nat'l Ass'n*,
59 Cal.4th 1 (2014) .................... ...........................................43, 44

*Worcester v. Massachusetts Commission Against Discrimination*,
Civ. No. 15-1263-C (Mass. Super. Ct. Jan. 6, 2021)...............................................74

**Federal Statutes**

28 U.S.C. § 1331 ...................................................... ................................................13

28 U.S.C. § 1367 ...................................................... ................................................13

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*......................12

**State Statutes**

Fair Employment and Housing Act, Cal. Government Code § 12940, *et seq.*.........12

**Rules**

Rule 8 ...................................................................... ........................................*passim*

Rule 12(b)(6)............................................................ ................................................30

Rule 26.1 ................................................................. ..................................................3

## I.    INTRODUCTION

Uber Technologies, Inc. ("Uber") gives riders the opportunity to rate drivers using a star rating system.  Thomas Liu ("Liu"), a former driver, alleges that Uber's reliance on this system to deactivate a driver's account when his or her star rating is too low has a disparate impact on minority (or "non-white") drivers and amounts to intentional discrimination.  The district court dismissed Liu's claims because, despite *five* opportunities, he failed to plausibly allege (1) a significant disparity between the number of accounts deactivated for low star ratings held by minority drivers versus white drivers; and (2) *any* factual allegation that Uber intentionally used the star rating system to discriminate against minority drivers *because of* their race.

To support his disparate impact claim, Liu attempted to plead a disparity between minority and white drivers based on survey statistics. However, his survey was incapable of plausibly demonstrating a significant disparity for multiple reasons. Among these reasons, and the reason the district court dismissed Liu's lawsuit, Liu failed to allege facts showing that the statistics he relied on were representative of drivers using Uber's Driver App. That is, Liu's survey results used the "wrong denominator" by failing to allege the racial composition of the total surveyed population.

Liu compounded this deficiency by designing the survey in a manner that

could not possibly produce reliable or representative responses. The survey asked: "If you have been deactivated by Uber, was it because your star ratings were too low?" The problem, as the district court explained, is that the survey elicited responses from a non-representative subset of drivers, predominantly drivers whose accounts had been deactivated by Uber, and not just for star ratings, but for any reason at all.

Given another chance to plead his case, Liu chose not to remedy deficiencies and instead appealed. His allegations of disparity therefore remained unsupported conclusions derived from fatally flawed statistics. Such allegations cannot serve to meet the pleading requirements imposed by Rule 8 under *Iqbal* and *Twombly*.

Liu's disparate treatment claim fares no better because he has not alleged a single fact suggesting that Uber intentionally discriminated against minority drivers, using the star rating system or otherwise. (*Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).)

Liu's claims were correctly dismissed and this Court should affirm.

## II.  STATEMENT OF JURISDICTION

Uber does not contest the district court's federal question jurisdiction over Liu's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and supplemental jurisdiction over Liu's claims under the Fair Employment and Housing Act, Cal. Government Code § 12940, *et seq.* ("FEHA").

(28 U.S.C. § 1331; 28 U.S.C. § 1367.) Liu filed a Notice of Appeal on September 29, 2022, though it was premature since it sought to appeal an interlocutory order dismissing his Third Amended Complaint ("TAC" or "operative complaint") with leave to amend within 28 days. (1-ER-155.) Regardless, this Court has jurisdiction based on Liu's filing of a Notice of Appeal on November 1, 2022, which appealed the district court's judgment entered in favor of Uber on October 27, 2022, after Liu "did not file an amended complaint by the deadline," resulting in dismissal with prejudice. (1-ER-2.)

## III. COUNTER-STATEMENT OF THE ISSUES

1.     Whether the district court properly granted Uber's motion to dismiss Liu's TAC alleging disparate impact discrimination under Title VII and FEHA where Liu, despite having *five* opportunities, failed to plausibly allege a significant disparity in the number of account deactivations for minority drivers relative to white drivers caused by Uber's star rating system?

2.     Whether the district court properly granted Uber's motion to dismiss Liu's claim of disparate treatment discrimination under Title VII and FEHA where Liu failed to plead a single allegation that Uber intended to discriminate against minority drivers on the basis of their race using the star rating system?

## IV.  COUNTER-STATEMENT OF THE CASE[1]

### A.  Procedural History and Facts Relevant to the Dismissal of Liu's Operative Complaint

#### 1.  Liu's Allegations of Disparate Impact Discrimination

On October 26, 2020, Liu filed a class action complaint ("Complaint") alleging that Uber's use of a customer rating system, a star rating system, "to decide employment terminations constitutes both disparate impact discrimination, as well as intentional discrimination, against non-whites."  (1-ER-145.)  The primary issue on appeal pertains to the district court's dismissal of Liu's race discrimination claim under Title VII and FEHA[2] based on a disparate impact theory.  This claim was alleged on behalf of two putative classes consisting of drivers across the country, and separately in California, "who have been subject to Uber's discriminatory use of its star rating system to terminate drivers."  (1-ER 39.)

On March 3, 2021, the district court granted Uber's motion to dismiss and dismissed the disparate impact claim with leave to amend.  (1-ER-142-43.)  It found that Liu failed to plausibly allege a disparate impact claim because the

---

[1] Uber disputes that Liu adequately pleaded or can ultimately prove that he is an employee of Uber, rather than an independent contractor. However, Uber focuses its arguments on Liu's failure to meet the pleading standard.

[2] Liu's Complaint alleged race discrimination claims under Title VII.  Liu added race discrimination claims under FEHA in his First Amended Complaint ("FAC"). (*See* 1-ER-144-152; 1-ER-125-141.)

Complaint was "too sparse and poorly drafted." The district court also outlined a list of deficiencies:

> For example, while alluding generally to 'social science research,' the complaint does not actually cite to or describe any research findings or other facts supporting the assertion that drivers of color are disproportionately harmed by the customer ratings system.

(*Id.*)

On March, 24, 2021, Liu filed the FAC. Liu did not allege other facts demonstrating a disparity between minorities and whites with respect to Uber's star rating system, but instead only cited various publications and alleged that "it is well recognized in social science research that employers' reliance on customer evaluation systems often leads to discriminatory impact on racial minorities." (1-ER-129.) He also alleged that there have been "reports . . . highlighting concerns to Uber that its star rating system[] is racially biased" and that Uber allegedly previously expressed concerns that riders may discriminate with respect to tipping. (1-ER-128-29.)

On July 30, 2021, the district court again granted Uber's motion to dismiss and dismissed the disparate impact claim with leave to amend. The court held that "[a]lthough Liu's overall theory is certainly plausible, his first amended complaint does not adequately allege facts to support each element of a disparate impact claim." (1-ER-99.) The three elements are: (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment

-15-

practice or set of practices, and (3) a causal relationship between the identified practice and the disparity.  (1-ER-100.)  The court found that Liu's added allegations plausibly alleged the second and third elements of a disparate impact claim—*i.e.*, the challenged policy and causation—but not that "a significant disparity exists with respect to employment for the protected group."  (1-ER-100.)  It explained that Liu cannot rely only on his "sparing[]" allegations of "his own experience."  (*Id.*)  Liu was not required "to follow any particular formula" to meet his burden, rather "[t]he endpoint that matters at the pleading stage is the plausible inference of a disparity, not the manner in which the plaintiff alleges it."  (1-ER-100-101.)  However, the district court was unable to "draw an inference of disparity from a single data point" consisting of Liu's alleged "termination."  (*Id.*)

On November 26, 2021, Liu filed a Second Amended Complaint ("SAC"). In addition to the facts alleged in the FAC, Liu alleged that his "counsel sent a survey[3] by electronic mail to approximately 20,000 Uber drivers (who are clients of [Liu's] counsel)" asking drivers "[i]f you have been deactivated by Uber, was it

---

[3] Liu stated in his SAC that this survey was in response to the district court's July 30, 2021 Order dismissing the disparate impact discrimination claim, which indicated that "Plaintiff 'must make a more sophisticated effort at the front end to develop a plausible factual basis in support of his assertion that terminations at Uber occur on a racially disparate basis.'"  (1-ER- 86.)  Notably, however, the district court did not specifically require Plaintiff to conduct a survey, only to allege facts sufficient to draw a "plausible inference of disparity."  (1-ER-100-101.)

because your star ratings were too low?" (1-ER-44-45; 1-ER-86-87.) Out of

approximately 20,000 drivers, 4,093 drivers, or only approximately 20%,

responded and their responses were alleged as follows:

|  | If you have been deactivated by Uber, was it because your star ratings were too low? | | | |
|---|---|---|---|---|
| What is your race? | Yes | No | % Yes | Statistical significance in disparity with whites? |
| White | 275 | 1310 | 0.174 | -- |
| Asian | 125 | 384 | 0.246 | 0.0002 |
| Black | 201 | 633 | 0.241 | <.0001 |
| Latinx | 117 | 574 | 0.169 | No |
| Other | 118 | 356 | 0.249 | 0.0003 |

(1-ER-45; 1-ER-87.)

Based on the chart (1) "17.4% of white respondents indicated that they had

been deactivated by Uber based on star ratings"; (2) "16.9% of the respondents

who indicated they were 'Latinx' indicated they had been deactivated by Uber

based on star ratings"; and (3) "24.6% of Asian respondents, 24.1% of Black

respondents, and 24.9% of respondents who identified their race as 'Other' than

the choices provided indicated that they had been deactivated by Uber based on

star ratings." (1-ER-45-46; 1-ER-87.) However, Liu also admitted these results

for the "Latinx" (which showed no disproportionate impact relative to whites) and

"Other" race categories were not accurate, because "[a] large number of

respondents who checked 'Other' on the race question self-identified themselves as

'Hispanic', 'Latino', 'Mexican American', or other identities that may be

considered 'Latinx'" but they were "tabulated under 'Other' . . . because they checked 'Other' in response to the survey." (1-ER-46; 1-ER-87.)

Liu alleged that Dr. Mark Killingsworth, a Rutgers University professor in the Department of Economics, reviewed the survey results and "found the results to be highly statistically significant that race is associated with Uber drivers in the survey reporting that they had been deactivated based on their star ratings." (1-ER-46; 1-ER-88.) However, he also concluded that those who identified as "Latinx", "there was no statistically significant disparity between them and white drivers with respect to whether they reported having been deactivated by Uber based on star ratings." (*Id.*)

### 2. The District Court's Dismissal of the SAC

On January 7, 2022, Uber filed a motion to dismiss. (1-ER-61-79.) At the motion hearing on March 17, 2022, the district court expressed concern that the SAC did not provide information regarding the sample population of the drivers who were sent emails by Liu's counsel. (1-ER-16-17.) Specifically, the district court questioned how it could "draw meaning from the[] percentages" without being provided the racial breakdown of the sample population surveyed by Liu. (1-ER-17.) It explained that the ratio of one race as to another in the sample population of 20,000 drivers would affect the results of the survey and that the result of responses of one race in relation to its ratio in the sample population is not

the same as when compared only to those who responded.  (ER-1-18-19.)  The district court explained that "it seems like you're making an apples-to-oranges comparison, and I don't see how we can draw any significance from it."  (1-ER-19.)  The district court confirmed there was no need for a "perfect survey," but that it needed to "figure out whether [the survey conducted] is somewhat informative or completely uninformative."  (1-ER-19-20.)  It concluded that, "because you haven't given me any information about the racial breakdown of the sample population that you surveyed, it's completely uninformative."  (1-ER-19-20.)

The district court also addressed the inaccuracy of the results regarding drivers identifying as "Latinx" as alleged in the SAC.  (1-ER-25-26.)  Liu's counsel admitted there was "clear confusion" among the surveyed drivers:

> I think I explained through the footnote that there was clear confusion among respondents about what the "Latinx" category was.  So I think it's clear that the "Latinx" result is not very meaningful.

(1-ER-35.)

On September 28, 2022, the district court issued a detailed order dismissing the SAC with leave to amend.  It held that the results of the survey "do not help Liu plausibly allege 'that minority Uber drivers are disproportionately terminated for low ratings compared to white drivers.'"  (1-ER-58-59.)  Specifically, the "survey methodology . . . uses the wrong denominator" by providing "results [that] are broken down by drivers who identify as being terminated and not by a sample

of Uber's total driver population." (1-ER-59.) The district court recognized that

"a survey described in a complaint alleging racial disparity need not be put to the

same rigorous test that might apply at the summary judgment stage." (*Id.*) But it

explained that "a survey must provide at least some information from which racial

disparity can be plausibly inferred" and that Liu's survey failed to do so. (*Id.*) The

district court provided the following example:

> Imagine 100 white drivers and 100 Black drivers.
> Assume that, on average, there exists no difference in star
> ratings between the white and Black drivers—in other
> words, no disparate impact. Imagine that Uber
> deactivates 20 white drivers: 5 due to their star rating and
> 15 for other reasons. And imagine that Uber deactivates
> 10 Black drivers: 5 due to their star rating and 5 for other
> reasons. In this scenario, 50% of Black drivers (5 out of
> 10) will answer "yes" to the question posed by the survey
> ("If you have been deactivated by Uber, was it because
> your star ratings were too low?"), while 25% of white
> drivers (5 out of 20) will answer "yes" to the same
> question. That result exists even though Uber deactivated
> a far lower percentage of Black drivers (10%) than white
> drivers (20%) and even though there exists no difference
> in the average star rating between Black and white
> drivers. Indeed, Uber deactivated the same percentage of
> white and Black drivers due to their star ratings in this
> hypothetical.

(*Id.*).

The district court further determined that, "[a]s Liu's counsel appeared to

concede at the hearing, the survey is likely flawed for another reason":

> By asking drivers whether they identified as "Latinx,"
> Liu's counsel likely skewed survey results because

> Latino drivers may not have known what the term
> "Latinx" means. Indeed, the complaint notes that many
> Latino respondents marked their race as "other" due to
> the confusion.

(*Id.*)  The district court dismissed the SAC and granted leave for Liu to file yet

another amended complaint.  (1-ER-60.)

### 3.    Liu's TAC and Order Dismissing the TAC with Leave to Amend

On June 20, 2022, Liu filed the TAC, which was identical to the SAC with

the exception that Liu added one footnote stating:

> In its Order of May 23, 2022 (Dkt. 56), the Court
> dismissed the previous version of this complaint
> (Plaintiff's Second Amended Complaint), based upon the
> belief that the respondents to this survey only included
> drivers who had been deactivated. In fact, the
> respondents included a mix of drivers who had been
> deactivated and who had not been deactivated. Thus, a
> "no" answer includes drivers who were not deactivated,
> as well as drivers who were deactivated for reasons other
> than their star rating.
>
> In order to confirm this, following the issuance of that
> Order, Plaintiff's counsel sent a follow-up email to the
> survey respondents who had answered "no", to clarify
> whether or not they had been deactivated for any reason.
> Of the respondents who answered "no" to the survey (and
> responded to the follow-up request for clarification),
> 51.7% indicated that they had not been deactivated and
> 48.3% indicated that they had been deactivated for
> reasons other than star ratings. Of the drivers who
> answered "no" to the survey, 56.5% responded to the
> follow-up request for clarification.

(1-ER-45.)

On July 5, 2022, Uber filed a motion to dismiss, which Liu opposed on July 19, 2022. (1-SER-4-44.) On September 28, 2022, the district court issued an order ("September 2022 Order") reiterating the reasons why Liu's survey "was 'essentially meaningless'" as reflected in is prior order: (1) "[b]ecause the survey focused only on drivers who had been deactivated, it could show a disparity between white and minority drivers, even if there was no actual disparity given the total driver population" (1-ER-3-4); and (2) use of the term "'Latinx,' a term that, as Liu himself concedes, likely led many confused Latino respondents to identify as 'other.'" (1-ER-4.)

It then held that Liu's "one change to his complaint," the footnote above, "makes Liu's complaint worse, not better." (*Id.*) While again recognizing that the survey "need not be put to the same rigorous test that might apply at the summary judgment stage," the district court concluded that the footnote only confirms confusion among surveyed drivers:

> The original survey was phrased in a way that seemed to elicit responses only from drivers who had been deactivated—not Uber's total driver population. The fact that a number of Uber drivers misunderstood this confusingly worded survey makes it even less useful.

(*Id.*)

It reiterated that its order "is not to suggest that a plaintiff must always include information about the effect of an employment practice on the defendant's

workplace to plead the first element of disparate impact claim." (*Id.*) It explained that in some situations, an alleged disparate impact may not need "further allegations about the resulting disparity" because it is "self-evident." (*Id.*) Citing *Jenkins v. New York Transit Authority*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009), the district court explained that a policy requiring employees to wear pants would plainly affect women whose religion required them to only wear skirts. (1-ER-4-5.)

It explained that, in contrast,

> Liu has plausibly alleged that racial bias *could* affect customer ratings in the rideshare industry, and so use of those ratings in Uber's employment decisions *could* cause a disparate impact. But his allegations are not so strong as to create an inference that use of the ratings will always cause a disparate impact, in the same way that a ban on skirts will always cause a disparate impact for members of a religion that requires skirts. Therefore, Liu must include non-conclusory allegations about the impact of the challenged practice at the actual company he is suing. But his allegations about the effects of the practice at Uber are incoherent—even more so now than before.

(1-ER-5.)

The district court took further effort to explain its conclusion in granting leave for Liu to file another amended complaint:

> As stated in prior rulings, it is hardly fanciful to suspect that Uber's practice of terminating drivers based on customer ratings negatively affects minority drivers. Nor, as previously noted, is a survey necessarily the only way a plaintiff in a case like this might satisfy their pleading

> burden with respect to the first element of a disparate
> impact claim. The problem is not with Liu's theory, but
> with his failure to develop meaningful factual allegations
> in support of it (and with his counsel's apparent failure to
> put thought or effort into the endeavor). Because the
> Court is not convinced that it would be impossible for
> Liu to state a disparate impact claim, he will be given one
> final chance to file an amended complaint.

(*Id.*)  Liu was granted leave to file an amended complaint "within 28 days of th[e]

order."  The district court stated that "[i]f no amended complaint [was] filed by that

date, dismissal of the third amended complaint [would] be with prejudice."  (1-ER-

6.)

Despite ample guidance from the district court on his pleading's deficiencies

and how to correct them (if he could), Liu did not file an amended complaint.  (*See*

1-ER-166.)  Instead, in an apparent concession that he would be unable to remedy

the defects identified by the district court, on September 29, 2022, Liu filed a

Notice of Appeal seeking review of the September 2022 Order.  (1-ER-155-156.)

On October 27, 2022, the district court entered "judgment in favor of the defendant

and against the plaintiff" finding that "plaintiff did not file an amended complaint

by the deadline, and so dismissal is with prejudice." (1-ER-2.)  Liu appealed the

judgment by filing a second Notice of Appeal on November 1, 2022.  (1-ER-153-

154.)

-24-

**B.     Procedural History and Facts Relevant to the Dismissal of Liu's Claim for Disparate Treatment Discrimination**

Liu's Complaint and FAC alleged an intentional discrimination claim in addition to his disparate impact claim addressed above.  (1-ER-151; 1-ER-139.)  On December 9, 2020, Uber moved to dismiss the Complaint, which was granted on March 3, 2021.  (1-ER-160.)  In Liu's FAC, he alleged that he "was deactivated by Uber because his average star rating fell below 4.6."  (1-ER-127.)  He alleged that he is Asian, speaks with a slight accent, "experienced riders asking where he was from in an unfriendly way," and noticed "passengers appearing hostile to him, which appeared to him to be a result of racial discrimination."  (1-ER-128.)  He further alleged that "he noticed riders cancelling ride requests after he had already accepted the ride and the rider was able to view his picture."  (*Id.*)

Finally, as discussed above, he cited various publications and alleged that Uber previously expressed concern about possible discrimination regarding tipping.  (1-ER-128-131; *see supra* at p. 8.)  Liu concluded that "[i]n light of research in this area, as well as Uber's self-professed statement that it would not allow tipping for drivers because of its concerns regarding customer bias . . . Uber's continued use of this star rating system constitutes intentional discrimination against minority drivers."  (1-ER-131.)

On July 31, 2021, the district court issued an order dismissing Liu's disparate treatment discrimination claim with prejudice.  (1-ER-102.)  The district

court held that Liu failed to allege facts giving rise to an inference Uber intended to discriminate against him because "[m]ere awareness that a facially neutral policy was likely to have a disparate impact is not sufficient to infer intent. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012)." (*Id.*) The district court left the door open for Liu to seek leave to amend to add the claim if discovery in the action "reveals discriminatory intent." (*Id.*)

## V.   SUMMARY OF ARGUMENT

The district court patiently provided Liu five opportunities over two years to present well-pleaded factual allegations plausibly stating a disparate impact claim. It provided Liu ample guidance on what allegations could meet Liu's pleading burden, while making clear that he was not required to plead any specific type of allegations. In his SAC, because Liu's counsel had access to thousands of driver clients, Liu chose to rely on statistical analysis based on his counsel's self-conducted survey. But rather than demonstrating a disparity within the relevant population of drivers, Liu's statistics amounted to unsupported conclusions about a non-representative population. Specifically, Liu used the "wrong denominator" in his survey results. He did not include any allegation regarding the racial composition of the total sample population such that it could be inferred the survey results plausibly reflected a significant disparity.

This deficiency was compounded by the fact that the survey question—"[i]f

you have been deactivated by Uber, was it because your star ratings were too low?"—elicited meaningless responses. The question tended to exclude responses from drivers with active accounts, and included responses from drivers whose accounts were deactivated for reasons other than their star ratings. In short, the survey asked the wrong question.

Liu then further compounded the problem when she alleged in her TAC that she sent a follow-up inquiry to her clients in an attempt to clarify the drivers' initial survey responses. The answers to the follow-up inquiry from the subset of drivers who responded confirmed the district court's concerns that the survey results were not representative, and further muddied the picture, making Liu's allegations "worse, not better." (1-ER-4.)

The survey was also deficient for other reasons, including because, as Liu admitted, it confused some Latino and Latina drivers who did not understand the "Latinx" category provided by the survey. In sum, the survey allegations were so flawed that they made Liu's disparate impact claim "incoherent." (1-ER-5.)

The core issue on appeal is whether the district court correctly held under these circumstances that Liu failed to plausibly allege a significant disparity in account deactivations for minority drivers relative to white drivers caused by low star ratings. Where statistics are pleaded to allege a disparate impact claim, those statistics must be for a population that is representative of the group at issue.

-27-

Otherwise, a court cannot reasonably infer that the statistics plausibly show a significant disparity in the relevant group. Allegations about a non-representative population are insufficient because (1) although presented as factual allegations, they are mere conclusions about what is occurring within the relevant group; and (2) at best, they are "'merely consistent with' a defendant's liability . . . 'stop[ping] short of the line between possibility and plausibility of entitlement to relief.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted).)

As explained in *Darensburg v. Metropolitan Transp. Com'n,* 636 F.3d 511, 520 (9th Cir. 2011), "[i]n any large population a subset can be chosen that will make it appear as though the complained of practice produced a disparate impact," but "when the entire group is analyzed any observed differential may disappear . . ."

The danger in presuming one population is representative of another is magnified where "there is a reason to think that some characteristic unique to the subgroup is related to the statistic in question . . ." (*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020).) That is certainly the case here, where the survey respondents were self-selected clients of Liu's counsel responding to a question directed to drivers whose accounts had been deactivated, regardless of whether the account deactivation was based on star ratings.

Consistent with these principles, the district court concluded it could not

reasonably infer that a disparity existed even among Liu's counsel's clients, let alone a nationwide group of drivers, and correctly dismissed Liu's claim.

The district court granted Liu another opportunity to amend his complaint. But Liu chose to stand on his TAC as alleged. As explained below, the district court's decision is consistent with Rule 8 and well-established precedent. It did not apply a heighted pleading standard merely by declining to accept conclusions that did not allow it to reasonably infer a significant disparity necessary to plausibly allege a disparate impact claim.

Tellingly, while amicus curiae, the Equal Employment Opportunity Commission ("EEOC"), urges the Court to vacate the dismissal of Liu's disparate impact claim, it implicitly concedes that Liu's survey allegations are insufficient. Instead, the EEOC argues that the Court should consider allegations Liu did not rely on to establish a disparity at the district court level and that he has ignored on appeal. The Court should not consider the EEOC's arguments, but regardless, the EEOC's arguments do not help Liu meet his pleading burden here.

Finally, the Court should affirm the dismissal of Liu's disparate treatment claim. Liu alleged not a single fact that Uber intended to discriminate against minority drivers. Liu's contention that Uber was merely aware of possible discrimination through the use of the star rating system is insufficient to infer discriminatory intent, as explained by this Court in *Wood v. City of San Diego*.

-29-

Uber respectfully requests for the Court to affirm the district court's dismissal of Liu's claims and judgment entered in favor of Uber.

## VI.    STANDARD OF REVIEW

A district court's dismissal of a complaint for failure to state a claim is reviewed *de novo*. (*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).)

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim" as actually pleaded, rather than as it *could* be pleaded.  (*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011); *see* Fed. R. Civ. P. 12(b)(6).)  A district court does not need to find a plaintiff could prove "no set of facts in support of the claim that would entitle the plaintiff to relief" to dismiss a complaint.  (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007); *William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 n. 6 (9th Cir. 2009) (recognizing that the Supreme Court in *Twombly* disapproved of language suggesting a standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").)  Rather, if the complaint fails to allege facts that, if proven, would show entitlement to relief, then it fails to state a claim—even if the plaintiff potentially *could* have but refused to present facts that would state a claim.  (*See Iqbal*, 556 U.S. at 683.)  The complaint must contain

allegations *showing* liability—not "merely consistent with a defendant's liability." *Id.* at 678 (quotation marks omitted).

A dismissal may be affirmed on any basis that is supported by the record. (*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020).)

## VII. ARGUMENT

### A. The District Court's Dismissal of Liu's Disparate Impact Discrimination Claim Should be Affirmed

#### 1. To Plead a Disparate Impact Claim Using Survey-Related Allegations, the Survey Must Ask the Relevant Population a Relevant Question

Rule 8 requires a complaint to include "enough facts to state a claim to relief that is plausible on its face.'" (*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id.* at 678.) A plaintiff cannot defeat a motion to dismiss by relying on "conclusory allegations of law and unwarranted inferences." (*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021; *see Pirani v. Slack Technologies, Inc.*, 13 F.4th 940, 946 (9th Cir. 2021).) Moreover, a court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." (*Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010).)

Instead, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (*Iqbal*, 556 U.S. at 677

(internal quotation marks and citation omitted).) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 678.) If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (*Id.* (quoting *Twombly*, 550 U.S. at 557).) Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief'" and the claim must fail. (*Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).)

To satisfy Rule 8 for a disparate impact claim, Liu must "set forth enough factual allegations to plausibly support each of the three basic elements" of the claim. (*Mandala*, 975 F.3d at 209; *see Reyes v. Waples Mobile Home Park Limited Partnership*, 903 F.3d 415, 425–26 (4th Cir. 2018) (plaintiff must identify the challenged practice and plausibly allege causation and a disproportionately adverse effect on minorities); *Moussouris v. Microsoft Corp.*, 2016 WL 6037978 at *3 (W.D. Wash. 2016) (discrimination requires a prima facie case and the burden at the pleading stage is to "make allegations sufficient to raise an inference or presumption of discrimination").) The elements of a disparate impact claim are (1) a significant disparate impact on a protected class; (2) a specific employment

practice; and (3) a causal relationship between the identified practice and the disparate impact.  (*Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1482 (9th Cir. 1987); *see Rose v. Wells Fargo Bank, N.A.*, 902 F.2d 1417, 1424 (9th Cir. 1990).)  The same standard applies for a disparate impact claim under FEHA. (*Ambat v. City and County of San Francisco*, 757 F.3d 1017, 1023, n. 2 (9th Cir. 2014) ("Because FEHA is interpreted consistently with Title VII, [citation], we conduct our analysis of both federal and state claims according to Title VII case law.").)

When, as here, the plaintiff relies on statistical analysis to allege a significant disparity at the pleading stage, a court will "not require [him] to prove in detail the methodological soundness of [his] statistical assessment."  (*Mandala*, 975 F.3d at 209–10.)  However, because Rule 8 requires plaintiffs to allege a plausible claim, "the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact"—*i.e.*, that there is a significant disparity caused by the practice.  (*Id.* at 210 (emphasis in original).)  To be plausible, the "analysis must, at the very least, focus on the disparity between appropriate comparator groups."  (*Id.*; *see Smith v. Xerox Corp.*, 196 F.3d 358, 368 (9th Cir. 1999), overruled on other grounds by *Meacham v. Knolls Atomic Power Laboratory*, 461 F.3d 134, 141 (2d Cir. 2006) (a disparate impact claim based on statistical analysis requires that the "plaintiffs must identify the correct population for the analysis").)

This is critical because the "statistical analysis must reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove." (*Mandala*, 975 F.3d at 210.) Statistical allegations using improper or irrelevant populations do not "nudge [a] claim[] across the line from conceivable to plausible." (*Twombly*, 550 U.S. at 569; *see Mandala*, 975 F.3d at 211 ("For instance, it would make little sense to judge a hospital's physician-hiring policies by looking at the effect those policies have on a population of high school graduates; most members of that group will be ineligible for the job, irrespective of the challenged policy, because they lack a medical degree.").) It does not matter that allegations about a *different* population may be "'consistent with' a defendant's liability," such allegations do not create "more than the mere possibility of misconduct" and are insufficient to meet Rule 8's plausibility standard. (*Iqbal*, 556 U.S. at 679.)

### 2. Liu Failed to Plausibly Allege a Significant Disparity Between Minority and White Drivers Whose Accounts were Deactivated Based on Star Ratings

The district court properly dismissed Liu's disparate impact claim because he relied on alleged statistics that did not reflect the relevant population and were based on a question designed to elicit irrelevant responses, and thus, did not plausibly allege a significant disparity between account deactivations based on low star ratings for white and minority drivers.

Liu concedes there are "hundreds of thousands of drivers across the country"

-34-

providing rides using Uber's Driver App (Liu's Opening Brief ("AOB") 2), but he supported his claim by providing allegations only for a skewed population of 4,093 drivers out of approximately 20,000 drivers who responded to Liu's counsel's flawed survey.

In dismissing the SAC, the district court identified several fatal flaws in the survey: (1) it used the "wrong denominator" and failed to allege the racial composition of the total surveyed population in order to allow the district court to draw meaning from the number of drivers who affirmatively responded; (2) the survey's primary question—"[i]f you have been deactivated by Uber . . ."—was drafted to solicit responses only from drivers whose accounts were deactivated, including for reasons other than low star ratings; and (3) as Liu conceded, the survey's results regarding Latino and Latina drivers was "not very meaningful" due to driver confusion. (1-ER-35; *see* 1-ER-46.)

Liu's TAC was properly dismissed because even though he was provided a fourth opportunity to plausibly allege a disparate impact claim, Liu failed to plead additional facts to allow the district court to reasonably infer a significant disparity. In fact, his only new allegations regarding a follow-up question answered by only some of the 4,093 survey respondents made "Liu's complaint worse, not better." (1-ER-4.)

The district court did not require Liu to conduct a survey, but Liu, having

access to 20,000 drivers through his counsel and deciding to take that approach, was obligated to take some measure of care to ensure the survey reflected the relevant population and asked questions capable of showing a disparate impact. He failed to do so. The district court's conclusion that Liu's disparate impact claim failed as a result is neither surprising nor controversial.

Rather than taking the (fifth) opportunity provided by the district court to correct his deficient allegations, Liu impliedly conceded he was unable to plead a valid case by prematurely appealing to this Court. The district court's thorough and thoughtful decisions showed why the results Liu decided to stand on are, at best, merely consistent with liability, not sufficient to plausibly allege it. Its dismissal should be affirmed.

### a. Liu Failed to Allege Facts Regarding a Representative Population Allowing for a Reasonable Inference of a Significant Disparity

Liu failed to provide any factual allegations showing that the drivers his counsel surveyed accurately reflected the pool of all drivers using Uber's Driver App. Regardless, the district court did not even require Liu to allege any such facts. It merely requested well-pleaded factual allegations about the racial composition of the population of drivers surveyed by Liu's counsel. (1-ER-11, 30.) As the district court repeatedly explained, allegations regarding the racial composition of the sample driver population, the "denominator," was needed for

the district court to determine whether it could be reasonably inferred that there is a significant disparity in account deactivations due to low star ratings between whites and minority drivers. (1-ER-3-5, 17-20, 59.) This denominator was needed because the ratio of one race with respect to another in the total sample population is necessary to give meaning to the results of the survey; that is, the percentage of one race in relation to its ratio in the sample population may not be the same as when compared only to those who responded to the survey. (1-ER-3-4, 18-19, 59.)

Thus, the district court was unable to plausibly infer a significant disparity in account deactivation based on star ratings of minority drivers within the sample driver population. Without the ability to do that, the district court was certainly unable to plausibly infer a significant disparity in account deactivations of minority drivers across the nation, which was required for Liu to plead a claim under Rule 8. As held by this Court:

> In any large population a subset can be chosen that will make it appear as though the complained of practice produced a disparate impact. Yet, when the entire group is analyzed any observed differential may disappear, indicating that the identified employment practice was not the cause of the disparity observed in the subset.

(*Darensburg,* 636 F.3d at 520 (quoting *Smith*, 196 F.3d at 369); *see id.* at 519 (quoting *N.Y. Urban League v. State of N.Y.*, 71 F.3d 1031, 1038 (2d Cir.1995)) ("A district court may not find the existence of disparate impact 'on the sole basis of [a statistic] unless it reasonably [finds] that [the statistic] would be a reliable

indicator of a disparate impact.'")

The district court correctly concluded that Liu's survey similarly "use[d] the wrong denominator":

> Imagine 100 white drivers and 100 Black drivers. Assume that, on average, there exists no difference in star ratings between the white and Black drivers—in other words, no disparate impact. Imagine that Uber deactivates 20 white drivers: 5 due to their star rating and 15 for other reasons. And imagine that Uber deactivates 10 Black drivers: 5 due to their star rating and 5 for other reasons. In this scenario, 50% of Black drivers (5 out of 10) will answer "yes" to the question posed by the survey ("If you have been deactivated by Uber, was it because your star ratings were too low?"), while 25% of white drivers (5 out of 20) will answer "yes" to the same question. That result exists even though Uber deactivated a far lower percentage of Black drivers.

(1-ER-59.)

The pleading standard required under Rule 8 may be "forgiving, [but] it is not toothless." (*Mandala*, 975 F.3d at 207.) Because Rule 8 requires more than conclusions, an unsupported presumption that a subset of a population is representative of the relevant population as a whole is insufficient.

In *Mandala*, the plaintiffs alleged that their employer's "policy not to hire persons with certain criminal convictions has a disproportionately large effect on African-American applicants." (*Id.* at 205.) The plaintiffs supported this claim with "national statistics showing that, on average, African Americans are more likely to be arrested and incarcerated than whites." (*Id.*) The Second Circuit

affirmed the dismissal of the claim. It held that statistics about a non-representative population were insufficient because the plaintiffs did not allege any facts that "national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at [the employer]." (*Id.* at 211.) As the court put it, plaintiffs' statistics were simply a "conclusory and unsupported assertion that these figures are so stark that they must hold true for this (or any) segment of the population." (*Id.*; *see Darensburg*, 636 F.3d at 520 ("An appropriate statistical measure must therefore take into account the correct population base and its racial makeup.").)

Liu similarly demanded that the district court accept his unsupported conclusion that any disparity among races reflected in the small group of 4,093 respondents accurately describes the experiences of not only the 20,000 driver clients represented by Liu's counsel, but drivers across America. The district court was not required to credit "naked assertions" or legal conclusions, even ones that "are cast in the form of factual allegations." (*Iqbal*, 556 U.S. at 678; *Coto Settlement*, 593 F.3d at 1034; *see Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, n 11 (10th Cir. 2020) ("The complaint . . . states that of 24 new hires, three men and no women were forty or older. But absent an allegation about the number of people who applied, we do not know whether the disparity in hiring gives rise to an inference of discrimination.").) Presuming Liu's allegations are

representative without supporting factual allegations would render Rule 8 toothless.

        b.    **Liu's Survey Asked the Wrong Question of the Wrong Population, and His Follow-Up Inquiry Only Made "Liu's Complaint Worse"**

Even had Liu attempted to allege his survey respondents were representative of the relevant population, Liu's survey did not allow for a reasonable inference that its results were reliable or representative because it was flawed by design. The primary survey question "[i]f you have been deactivated by Uber, was it because your star ratings were too low?," tended to elicit responses from a non-representative population, *i.e.*, those whose accounts had been deactivated. The fact that the question was directed to individuals whose accounts were deactivated based on reasons other than star ratings only served to confuse matters further. (1-ER-44-45.) As explained in *Mandala*, presuming one population accurately describes another is even more dangerous where "a confounding variable exists." (*Mandala*, 975 F.3d at 211.) "The danger behind [accepting] th[e] presumption becomes even more pronounced where there is a reason to think that some characteristic unique to the subgroup is related to the statistic in question . . ." (*Id.*) Liu's allegations of disparity derived from a group of self-selected clients of Liu's counsel whose accounts had been deactivated are necessarily unreliable and unrepresentative of the larger population of drivers, the significant majority of

whom have never had their accounts deactivated.

In one footnote (the only amendment made to the TAC), Liu attempted to salvage the results of this survey by alleging that out of the group who answered "no" to the survey question, around half (56.5%) responded to a follow-up email requesting clarification of their responses and among those, another half (51.7%) indicated that they had not been deactivated at all. (*Id.*) This additional information did not allow the district court to reasonably infer that there is significant disparity in account deactivations between minority drivers and white drivers within the relevant population. Instead, as the district court concluded, it injected even more uncertainty regarding the survey's results, making the survey "even less useful." (1-ER-4.)

These additional allegations could not undo that the wrong question had been asked in the first place. Additionally, nearly half of the survey respondents did not respond to the follow-up communication at all. (1-ER-45.) And Liu failed to break down the race of those who did or did not respond to determine whether the responses were in any way representative of the five race categories in the survey. One or more categories of drivers may have been more likely to respond to the follow-up inquiry, or more likely to understand the survey question in a different way than another group when the question was first asked. Liu also failed to include factual allegations in his TAC explaining how the follow-up inquiry

impacted the survey results, if at all, or why the survey results could plausibly be representative of the driver population as a whole. The results of Liu's follow-up communication merely added another layer of faulty presumption that a smaller subgroup is necessarily representative of a larger population. (*Darensburg,* 636 F.3d at 520.)

Liu's additional allegations do confirm the survey respondents, and undoubtedly non-respondents who received the survey, interpreted the survey as soliciting answers only from drivers whose accounts were deactivated. This confusion is reflected in the survey results. The survey includes 4,093 total responses and 3,257 "no" responses. (1-ER-45.) If, as Liu alleges, 48.3% of "no" responses means the driver's account was deactivated for a reason other than star ratings, that percentage applied to all survey respondents would be approximately 1,573 drivers. (*Id.*) Another 836 drivers responded to the survey that their accounts were deactivated based on their star ratings. In total, that means 2,409 drivers out of 4,093—or 59% of survey respondents—had their accounts deactivated for one reason or another. (*Id.*) On its face, it is implausible that almost 60% of drivers in the total driver population had their account deactivated by Uber.

Liu provided nothing more than conclusory allegations, and improperly demanded that the district court make "unwarranted inferences" about what those

reveal, if anything, about the larger, relevant population. (*Benavidez*, 993 F.3d at 1145.)

The district court was not required to blindly accept Liu's survey results, and Liu's added allegations in the TAC do not permit any conclusions to be drawn from the survey, except to confirm that the survey responses are not probative of anything. The district court thus correctly held that Liu's reported survey results could not plausibly show "a significant disparity with respect to employment for the protected group." (1-ER-4.)

> c. **Other Flaws in Liu's Survey Also Support the TAC's Dismissal**

There are also other reasons why the district court correctly dismissed the TAC.

Liu's survey population was comprised only of self-interested clients of his attorney who self-selected whether or not to respond to the survey. Drivers who have hired an employment lawyer are more likely to complain of alleged discriminatory account deactivation than drivers as a whole.

This type of "selection bias" where "members of the population are chosen based on a nonrandom criterion or are selectively included or excluded from the sample group" undermines the credibility of a survey. (*Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal.4th 1, 43 (2014).) The concern is magnified where the recipients are aware that the results could benefit them in litigation. Such knowledge

"undermines any possible inference that the survey responses were objective."
(*Sirko v. Int'l Bus. Mach. Corp.*, 2014 WL 4452699 at *4 (C.D. Cal. 2014) (class counsel's survey inadmissible due to self-interest bias).)

The risk of bias also increases where a large number of those surveyed do not respond. (*See Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814 at *17–18, 24 (C.D. Cal. 2019) (excluding non-random survey with 33% response rate and concluding that an unreliable survey could not be used to prove liability).) Here, out of approximately 20,000 drivers, approximately 15,000, or 80%, chose not to respond.

Liu further conceded that there was "clear confusion" over the meaning of "Latinx" leading to a "result [that] is not very meaningful." (1-ER-35; *see* 46.) Yet in his TAC, Liu completely ignored the district court's concern that this confusion resulted in skewed results.[4]

Given the numerous flaws, the district court's conclusion that Liu did not meet his pleading burden was well-reasoned. (*See Frappied*, 966 F.3d at 1053 (granting a motion to dismiss where the plaintiffs' statistical allegations were

---

[4] Liu's allegations related to the survey also contain other flaws, including failing to allege a margin of error or any meaningful details related to the methodology of how the survey was conducted and the results tabulated. (*See Duran*, 59 Cal.4th at 46-47 (significant margin of error may render survey results unreliable); *Jimenez*, 2019 WL 13088814, at *24 (unreliable survey could not be used to prove liability); *Sirko*, 2014 WL 4452699, at *4 (totality of circumstances rendered survey inadmissible).)

"presented in a confusing and convoluted manner, and they appear[ed] contradictory" because they allege "merely [a] *possible* cause of [the defendant's] termination decisions") (emphasis in original).)

All of these reasons, jointly and separately, establish that the district court properly dismissed Liu's disparate impact claim. (*Sonner*, 971 F.3d at 839 (dismissal may be affirmed on any basis that is supported by the record).)

### d. Liu Continues to Misunderstand the Survey's Deficiencies

Liu's TAC was dismissed with leave to amend. (1-ER-6.) However, Liu did not substantively amend because he did not understand the flaws in his survey, believing as he still does now that the district court "required [him] to allege in his complaint sufficient evidence to prove a prima facie case of disparate impact discrimination." (AOB 27.) Liu's misunderstanding is severalfold.

First, the district court did not require Liu to rely on survey statistics to plausibly allege a significant disparity. (1-ER-4-5; 1-ER-100-101.) Liu *chose* to rely on statistics, and the statistics he chose to use were flawed and non-representative.

Second, despite being asked to merely allege the racial composition of the population he decided to sample, Liu continues to believe the district court required him to provide statistics for a population beyond his counsel's client drivers. (AOB 34 ("Plaintiff could not possibly have sampled a larger proportion

of Uber's total driver population, as the district court seemed to suggest [Plaintiff] should have done, without obtaining discovery from Uber.")  But the district court unequivocally explained that it could not draw "meaning from [his] percentages" because "you haven't given [the court] the racial breakdown of ***the sample population that you used***."  (1-ER-17; *see* 1-ER-59 ("The survey results are broken down . . . not by a ***sample*** of Uber's total driver population.") (emphasis added).)

Third, the district court explained that one of the survey's flaws was that it used the "wrong denominator" because the "results are broken down by drivers who identify as being terminated and not by a sample of Uber's total driver population."  (1-ER-59.)  The district court needed to know the racial makeup of the sample population to determine what plausible inference, if any, could be drawn in support of Liu's claim from the sample he surveyed.  For example, assuming 125 Asian drivers had their accounts deactivated because of their star rating, the proper ratio for comparison would be 125 Asian drivers divided by the total number of Asian drivers in the sample population, not out of the 509 Asian drivers who provided a response to Liu's survey.  These two numbers can be vastly different, and the results of the latter subset cannot be assumed to be reflective of the sample population in any way.  (*Darensburg*, 636 F.3d at 520 ("In any large population a subset can be chosen that will make it appear as though the

complained of practice produced a disparate impact. Yet, when the entire group is analyzed any observed differential may disappear, indicating that the identified employment practice was not the cause of the disparity observed in the subset.").)

In his Opening Brief, Liu argues that his survey did in fact elicit the "denominator" requested by the district court, which he says is the sum of (1) "Uber drivers who answered 'no' and were deactivated for reasons other than their rating"; and (2) "Uber drivers who answered 'no' and were not deactivated." (AOB 30.) But this number is not the "denominator" needed to create a plausible inference of a disparity in the total driver population. As discussed above, it does not reveal the correct ratio of drivers whose accounts were deactivated based on race in the sample population. The number relies on unwarranted inferences about the representative nature of subgroups as to larger populations because, among other reasons, it is based on a flawed survey question that tended to invite only drivers whose accounts were deactivated, regardless of the reason their accounts were deactivated, to respond in the first place.[5]

Finally, Liu argues that district court erred because he corrected its

---

[5] Liu's counsel seemed to suggest at the hearing on the motion to dismiss the SAC that she had collected information regarding the race of the 20,000 clients she surveyed. (1-ER-11 and 1-ER-30.) At minimum, Liu's counsel had access to that information and could have obtained it through further inquiry. Liu's decision not to allege this information suggests the relevant population data would not have supported Liu's theory.

-47-

"misconception" that the 4,093 drivers who responded to the survey included only drivers who were deactivated. (AOB 33.) However, as explained above, Liu's attempt to clarify this issue only highlighted the confusion caused by Liu's flawed survey and did nothing to provide factual allegations regarding the racial makeup of the relevant driver population.

e.   **Liu's Expert's Conclusions Based on Liu's Flawed Survey Do Not Plausibly Show a Significant Disparity**

Liu argues that Dr. Killingsworth's findings were sufficient to plausibly allege a significant disparity. (AOB 31-32.) However, Dr. Killingsworth did not design or perform the survey and he was consulted only to form conclusions based on the limited universe of responses from 4,093 drivers. (1-ER-20 ("We did the legwork, and then I asked this expert to take a look at the results, and crunch numbers about the data and whether it met the test of statistical significance"); 1-ER-46-47; 1-ER-88-89.) Mechanically performing a statistical significance test on data Dr. Killingsworth was given does not transform the data into one that can answer a question that was never asked. Because Liu's survey was flawed, so too were Dr. Killingsworth's conclusions. Allegations about a non-representative population are insufficient to plausibly state a disparate impact claim regardless of any analysis conducted on the population by an alleged expert. Otherwise, plaintiffs can sidestep Rule 8 simply by hiring an expert to restate what are otherwise insufficient conclusory allegations.

Additionally, Dr. Killingsworth's conclusions showed that Latino and Latina drivers were deactivated based on their star rating at a lower rate than white drivers. (1-ER-46-47; 1-ER-88-89.) The disparate impact for this group went the *opposite* direction from what Liu was trying to allege. Yet Dr. Killingsworth did not opine regarding how this result impacted the combined result for all minority drivers, which is the group Liu sought to represent. Doing so would have reduced the alleged disparity between account deactivations for minority drivers compared to white drivers, perhaps in a meaningful way. This is another factual gap that supports the district court's dismissal of the TAC.

### 3. Liu's Allegations Regarding His Personal Experience are Not at Issue and are Insufficient to State a Disparate Impact Claim Nonetheless

Liu argues that his survey allegations together with the allegations about his personal experience were sufficient to plausibly allege a disparate impact claim. (AOB 32–33.) However, Liu forfeited this issue for appeal by failing to address it in opposing Uber's motion to dismiss the TAC. In his opposition, Liu only vaguely mentioned his "own experience of discrimination" in a footnote without analysis or supporting authority. (1-SER-10.) His cursory statement was buried in a section titled, "The Court Should Find that the Plaintiff's Survey Data and Expert Analysis Is Sufficient at the Pleading Stage to Show 'A Disparity Actually Exists." (*Id*.) An argument "buried in the middle of a section" addressing a different issue

before the district court does not preserve the "buried" issue for appeal. (*Conservation Northwest v. Sherman*, 715 F.3d 1181, 1188 (9th Cir. 2013).)

Regardless, Liu's personal experience does not plausibly suggest that the star rating system resulted in a substantial disparity between minority and white drivers who were deactivated because of their star rating. (*See Boykin v. Fenty*, 650 F.App'x 42, 44 (D.C. Cir. 2016).) Tellingly, Liu does not cite any authority in support of his argument and as explained below, the EEOC implicitly concedes that these allegations are insufficient. (*See infra* at pp. 53-54; EEOC AB 21-24 (arguing for reversal without reference to Liu's allegations regarding his personal experience).)

Significantly, Liu failed to even plausibly allege that his personal star rating was low because of his race, which resulted in his account deactivation. To start, his allegations are contradictory. He first suggests that he was discriminated against because riders canceled their rides after they were able to see his picture. (1-ER-41.) But these riders could not discriminate against him by providing him a low star rating because Liu alleged that riders only rate drivers "after each ride." (1-ER-39.) Obviously, riders could not have rated Liu after their rides if those rides were canceled. Thus, as alleged, those who allegedly harbored racial animus against Liu did not affect his star rating.

Liu's remaining allegation that he "experienced riders asking where he was

from in an unfriendly way" is equally insufficient. (1-ER-41.) It does not plausibly show that his race had anything to do with the question, let alone a rating, if one was even provided. (1-ER-40 (star rating not required; riders are only "asked to rate their driver").) This allegation required the district court to draw numerous unwarranted inferences including (1) these riders were biased against Liu because of his race; (2) they provided Liu a rating; (3) their ratings were so consistently low that they brought Liu's average rating below the minimum; and (4) their ratings were because of Liu's race, and not for any other reason including, but not limited to, reckless driving, bad attitude, or having a dirty car interior.

Because Liu's allegations of his personal experience did not plausibly allege that Liu's account was deactivated because of racially-motivated ratings, they certainly did not require the district court to reasonably infer a significant disparity between all minority drivers and all white drivers who were deactivated because of their star rating.

### 4. The District Court Did Not Apply a Heightened Pleading Standard

Liu contends that the district court created a heightened pleading standard "untethered from any case law," which "grew taller with each motion to dismiss." (AOB 35.) But the district court did just the opposite. It reasonably provided Liu with extensive guidance over the course of numerous amended complaints to provide the well-pleaded factual allegations it needed to reasonably infer a

plausible disparate impact claim in accordance with Rule 8 and consistent with binding precedent.  Judgment was correctly entered because Liu persisted in relying on conclusory allegations regarding a flawed survey despite the district court's effort and patience.

To start, Liu argues that the district court moved the goalposts for what it stated would be sufficient to plausibly allege a disparity in its Order dismissing the Complaint.  Liu suggests that the district court stated he needed to cite or describe social science research to plead a significant disparity, but when he did so, the court ignored its prior order and dismissed the FAC.

This argument fails because it misinterprets the district court's order.  Liu's Compliant failed to allege facts sufficient to plausibly allege *two* elements of a disparate impact claim, causation and a disparity.  In its order dismissing the Complaint, the district court generally provided guidance regarding allegations that could support these elements of the claim.  It stated, "while alluding generally to 'social science research,' the complaint does not actually cite to or describe any research findings," but it also outlined *other* ways in which Liu's Complaint would needed to be amended, namely that it needed to include "other facts supporting the assertion that drivers of color are disproportionately harmed by the customer ratings system."  (1-ER-142.)  Liu's FAC did not contain such other facts, and such facts go directly to establishing a disparity, something Liu failed to do.

Next, Liu argues that in dismissing the FAC, the district court relied on cases that did not support the dismissal of his disparate impact claim. The district court cited *Freyd v. Univ. of Oregon*, 990 F.3d 1211 (9th Cir. 2021) for the elements of a disparate impact claim. (1-ER-100.) Liu appears to take issue with *Freyd* because it was an appeal from summary judgment. However, it was cited only for the elements of the claim, not to demonstrate that Liu failed to plead a prima facie case. As Liu concedes, immediately after citing *Freyd*, the district court explained that "[a]t the pleading stage, the complaint need only allege facts giving rise to plausible inferences that a disparity exists and is caused by the identified practice." (*Id.*)

Liu then argues that *Moussouris v. Microsoft Corp.*, 2016 WL 6037978 (W.D. Wash. 2016) is inconsistent with dismissal because the "court analyzed *only* the latter requirements of a disparate impact claim: the existence of a specific employment practice and a causal relationship," suggesting that there is no requirement to plausibly allege a disparity. (AOB 38.) But *Moussouris* addressed only those two elements because the defendant challenged only those two elements. (*Moussouris*, 2016 WL 6037979 at *3.) Unlike Liu, the *Moussouris* plaintiffs alleged facts of a disparity in the **relevant** population caused by the performance evaluation methods that were being challenged. The *Moussouris* plaintiffs alleged that (1) "[i]n positions that Microsoft categorizes as 'Tech' in

nature, only 16.9% of employees are female, while 83% are male'; and (2) "'as a group [female employees] received, on average, lower rankings despite equal or better performance.'" (*Id.* at *2.)

Liu argues that *Chaidez v. Ford Motor Co.*, 937 F.3d 998 (7th Cir. 2019) is inconsistent because the court found the plaintiffs' allegations sufficient even though they were "unsupported by *any* statistical evidence." (AOB 39.) But the *Chaidez* plaintiffs defeated a motion to dismiss because, as recognized by the EEOC, they pleaded "an actual disparity in the employer's workforce." (*See* EEOC AB 12.) Specifically, they provided factual allegations regarding the makeup of the relevant population supported by photographs attached to the complaint as exhibits that showed a racial disparity in the recent classes of new hires. (*Chaidez*, 937 F.3d at 1007.)

Contrary to Liu's argument, *Moussouris* and *Chaidez* are entirely consistent with the dismissal of Liu's disparate impact claim in each of the Court's four orders granting Uber's motions to dismiss. Unlike the plaintiffs in those cases, Liu failed to allege facts allowing the district court to reasonably infer a racial disparity among drivers whose accounts were deactivated. Nonetheless, as explained above, the district court correctly dismissed Liu's TAC, regardless of which cases it may have cited in dismissing the FAC. (*Sonner*, 971 F.3d at 839 (dismissal may be affirmed on any basis that is supported by the record).)

### 5. Liu's Disparate Impact Claim Also Fails Because Liu Failed to Plausibly Allege Causation

The dismissal of Liu's TAC should also be affirmed because Liu failed to plausibly allege the third element of a disparate impact claim: causation.

Liu's flawed survey of a non-representative population not only fails to plausibly show disparity, but also fails to adequately demonstrate causation. *See Smith*, 196 F.3d at 365 ("Plaintiffs must . . . present statistical evidence 'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" (citation omitted).)

Second, as explained above, Liu's allegations about his personal experience do not even plausibly allege that any rider discriminated against him based on his race by giving him lower ratings, let alone that other drivers' low ratings were caused by discrimination. (*See* 1-ER-39-41.) The district court could not have reasonably inferred causation as to a nationwide group of drivers based on one driver's purported experience, or here, one driver's alleged speculation. (*See Boykin v. Fenty*, 650 F.App'x 42, 44 (2016) (D.C. Cir. 2012) ("Allegations about the appellants' individual experiences accessing services, however, say nothing about whether the shelter's closure had a disparate impact on persons with disabilities' access to housing as opposed to persons without disabilities' access to housing.").)

-55-

Third, Liu's allegations based on social science publications were also

insufficient. The majority of these allegations addressed vastly different contexts

such as supervisors' performance ratings and appraisals[6], online offers for

auctions[7], and rental property accommodations.[8] They say nothing about possible

discrimination by riders against drivers using Uber's Driver App. The two

publications that refer to Uber do not present any statistical study[9] and one

concluded there are likely other reasons for any disparity in ratings, stating:

    Some drivers observe that they receive low ratings in response to a

---

[6] 1-ER-43-44 citing to The Effects of Race and Worker Productivity on
Performance Evaluations," Indus. Relations, Vol. 40, at 571 (2001); Mobley, W.,
"Supervisor and Employee Race and Sex Effects on Performance Appraisals: A
Field Study of Adverse Impact and Generalizability," Academy of Management
Journal, Vol. 25, at 605 (Sept. 1982).

[7] *Id.* citing to Shohat, M. and Musch, J., "Online Auctions as a Research Tool: A
Field Experiment on Ethnic Discrimination, Swiss Journal of Psych," Vol. 62, p.
139 (2003); Doleac, J. and Stein, L., "The Visible Hand: Race and Online Market
Outcomes," The Economic Journal, Vol. 123 (Nov. 2013); Ayres, I., et al., "Race
Effects on eBay," RAND Journal of Economics, Vol 46, at 891 (2015).

[8] *Id.* citing to Gilheany, J. et al., "The Model Minority? Not on Airbnb.com: A
Hedonic Pricing Model to Quantify Racial Bias against Asian Americans," J. of
Tech. Science (alleged to be available at http://techscience.org/a/2015090104/);
Edelman, B., "Response to Airbnb's Report on Discrimination" (discrimination by
hosts against guests, not limited to racial minorities (alleged to be available at
http://www.benedelman.org/news/091916-1.html).

[9] 1-ER-42-44 citing to Rogers, B. 2015. "The Social Costs of Uber." The
University of Chicago Law Review Dialogue 82:85 (alleged to be available at
https://lawreview.uchicago.edu/sites/lawreview.uchicago.edu/files/uploads/Dialog
ue/Rogers_Dialogue.pdf); Rosenblat, A., Levy, K., Barocas, S., & Hwang, T.
(2016), *Discriminating Tastes: Customer Ratings as Vehicles for Bias*, Intelligence
and Autonomy (alleged to be available at
https://datasociety.net/pubs/ia/Discriminating_Tastes_Customer_Ratings_as_Vehic
les_for_Bias.pdf).

variety of things outside of their control, including: surge pricing; GPS
or navigation malfunctions; the passenger's misplacement of their own
location pin for pick-up; holding passengers in compliance with both
Uber's rules and local laws, such as not taking more passengers than
there are seatbelts in the vehicle.

(Rosenblat, A., Levy, K., Barocas, S., & Hwang, T. (2016), *Discriminating Tastes:
Customer Ratings as Vehicles for Bias*, Intelligence and Autonomy, at p. 6.[10]).) At
best, these allegations reveal only that there could be numerous reasons unrelated to
race causing low star ratings for drivers, which is hardly sufficient to plausibly allege
the causation element of a disparate impact claim, particularly when coupled with
Liu's barebones individual allegations.

Accordingly, the Court should affirm the dismissal because Liu also failed to
plausibly allege that any disparity in account deactivations based on star ratings
between minority and white drivers was caused by discriminatory star ratings from
riders.

### 6. Dismissal Furthers Title VII's Purpose of Addressing Genuine Discrimination

Liu contends that dismissal of his disparate impact claim undermines Title
VII's purpose. Liu summarily argues in one sentence that the September 2022
Order conflicts with "long-standing case law demonstrating that discrimination

---

[10] The TAC alleged this article is available at
https://datasociety.net/pubs/ia/Discriminating_Tastes_Customer_Ratings_as_Vehic
les_for_Bias.pdf.

claims should be liberally construed in the interest of effectuating the remedial purpose of anti-discrimination statutes (and because discrimination claims so often lack a smoking gun)." (AOB 43–44.) However, the only case Liu cites, *Ramirez v. National Distillers and Chemical Corp.*, 586 F2d 1315, 1321 (9th Cir. 1978), predates *Iqbal* and *Twombly* and does not address the sufficiency of discrimination allegations on a motion to dismiss. (*Id.* at 1316 (reviewing summary judgment granted based on procedural mistakes by the EEOC in processing the plaintiff's administrative charge).) Instead, it held that "[p]rocedural technicalities should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits." (*Id.* at 1321.)[11] There are no procedural "technicalities" at issue in this case, but rather the substantive question of whether Liu met his pleading burden (which he did not).

Contrary to Liu's unsupported contention, Rule 8's pleading requirements apply equally in "all civil actions," including discrimination cases. (*Iqbal*, 556 U.S. at 664.) In fact, "[t]he Supreme Court expressed that adequate safeguards

---

[11] *Ramirez* cited *Mahroom v. Hook*, 563 F.3d 1369 (9th Cir. 1977) and *Davis v. Valley Distributing Co.*, 522 F.2d 827 (9th Cir. 1975), both of which explained that procedural ambiguities in Title VII should be resolved in favor of the plaintiff. (*Mahroom*, 563 F.3d at 1375 ("courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party.") (citation omitted); *Davis*, 522 F.2d at 831 ("courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party.") (citation omitted).)

must be implemented at the prima facie stage to avoid hailing defendants into court for racial disparities they did not create." (*Reyes v. Waples Mobile Home Park Limited Partnership*, 903 F.3d 415, 425 (4th Cir. 2018); *see e.g., Smith*, 196 F.3d at 365 ("the Supreme Court has established safeguards" to ensure that when statistics are utilized to raise an inference of discrimination they "identify a specific employment practice" and "present statistical evidence 'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'") (citation omitted).) Accordingly, the district court properly applied Rule 8 and dismissed Liu's TAC.

It also does not matter that Liu believes he could "bolster" his allegations with discovery. (AOB 8; *see* AOB 14 (survey could be "corrected when conducting analysis of actual data from Uber during the discovery process"); *see also* AOB 43 ("Plaintiff needed discovery to satisfy the District Court's pleading standard . . .") The district court already gave Liu ample chances to "correct[]" his self-conducted survey, and Liu had access to 20,000 drivers through his counsel; he did not need "the discovery process" to ensure he had enough information to meet his pleading burden. The Supreme Court held in *Twombly* that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." (*Twombly*, 550

U.S. at 558.)  It reemphasized two years later that "Rule 8  . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." (*Iqbal* at 678-79.)  Applying this standard, this Court has held that even if plaintiffs may be "working from an informational disadvantage" at the pleading stage (which is not the case here) it "does not mean that they are free to rely on conclusory statistical inferences to force their way into discovery."  (*Mandala*, 975 F.3d at 212.)  Because Liu's complaint "is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  (*Id.* at 686.)

Liu's policy arguments do not warrant a reversal of the district court's dismissal.

### 7. The EEOC Fails to Establish a Basis for Reversing the District Court

#### a. The EEOC Improperly Relies on Issues Not Raised By Liu on Appeal

The EEOC also focuses on policy arguments in its brief, to the exclusion of the issues actually raised in this appeal.  The EEOC ignores Liu's allegations regarding his survey and personal experience, implicitly conceding those allegations failed to plausibly allege a disparate impact on minority drivers whose accounts were deactivated based on their star rating.  (EEOC AB 21-24.)  Instead, the EEOC relies solely on allegations not addressed by Liu on appeal or in opposing the dismissal of the operative complaint.

-60-

The EEOC argues that Liu plausibly alleged a disparate impact claim because (1) "Liu cited and quoted from social-science research that analyzed Uber's consumer-sourced rating system—the very system he challenges—and concluded that '[c]onsumer-sourced ratings like those used by Uber are highly likely to be influenced by bias on the basis of factors like race or ethnicity'"; and (2) Liu cited Uber's own purported statement that "passengers discriminate against racial minorities" and that "allowing [app-based] tipping would therefore discriminate against minority drivers in the wages they would receive." (EEOC AB 21-22.) Liu did not rely on these allegations in opposing Uber's motion to dismiss the TAC and thus, he did not preserve an argument based on them for appeal. (*Conservation Northwest*, 715 F.3d at 1188.)

Liu also did not argue in his Opening Brief that the TAC was erroneously dismissed because it included references to publications and allegations regarding Uber's alleged prior position regarding possible discrimination by riders. He made passing references to them in addressing prior orders instead of the order dismissing the operative complaint. (AOB 36, 38.; *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present appellant's contentions and the reasons for them").) But Liu does not challenge the district court's orders dismissing his disparate impact claim in his

Complaint, FAC, or SAC, and he does not cite any of these allegations in his TAC on appeal. Liu "must clearly articulate in [his] opening brief any issues that [he] intend[s] to raise on appeal. (*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010).) His conclusory statements in "footnote[s] do[] not meet this standard." (*Western Watersheds Project v. Abbey*, 719 F.3d 1035, 1042 n. 2 (9th Cir. 2013); *see Silveria v. Koehn*, 2021 WL 5277080, at *1 n. 1 (9th Cir. 2021) ("Because these assertions are not supported by argument or citation to any portions of the record, we deem them abandoned.").)

The Court should not address the EEOC's argument because it is being raised for the first time by amicus curiae. (*Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir.1993) ("Generally, we do not consider on appeal an issue raised only by an amicus.").)

> ### b. The EEOC's Arguments Lack Merit
>
> #### 1. The EEOC Misunderstands the District Court's Ruling and Misinterprets the Cases It Cites.

Even if the Court considers the EEOC's argument, it should be rejected because it is based on a misunderstanding of the district court's ruling and it is unsupported by the cases the EEOC cites. The EEOC recognizes that Liu must allege facts allowing the district court to "reasonably infer[] that the practice he challenges caused a disparate impact." (EEOC AB 11.) That includes factual allegations plausibly alleging a disparate impact exists. That was the precise issue

confirmed by the case the EEOC cites, *Frappied*, 966 F.3d at 1055, where the Seventh Circuit stated, "[w]e must determine whether [plaintiff's alleged] statistics suffice to make plausible plaintiffs' claim that [the defendant's] termination policies had a disparate impact on employees forty or older." (*See Id.* at 1055 (referring to statistics regarding the disparity in retained and laid off employees who were under 40 or were 40 or older).)

While the district court looked at the statistics Liu alleged just as *Frappied* explains it should, the EEOC believes the district court "required too much of Liu." (EEOC AB 22.) The EEOC argues that the district court "require[d] [Liu] to allege what is 'actually happening" and to "show that a disparate impact 'actually manifested itself." (EEOC AB 19.) In other words, to prove an evidentiary basis demonstrating a disparate impact on minority drivers. (*See* EEOC AB 19, 22 (requesting this Court to not impose a requirement for plaintiffs to plead the "actual disparate impact" that is occurring.) But the district court did not require Liu to allege facts demonstrating that an actual disparity exists between minority and white drivers in the total population of drivers. Rather, the district court only required Liu to sufficiently plead a plausible disparity, which is an element of a disparate impact claim. As the district court pointed out, it need not only have been done through statistical evidence. (1-ER-4-5.) Liu just needed to plead it *somehow*; he chose to use the significant statistical evidence at his counsel's

disposal. Having done so, the law—which the district court faithfully applied—required Liu to include statistics plausibly reflecting the racial makeup of the relevant population. Liu failed to do so. Like Liu, the EEOC also misunderstands what was required to remedy Liu's non-factual and conclusory allegations of a disparity.

That does not mean the district court "impose[d]" a requirement for "plaintiffs to plead information they have no way of knowing." (EEOC AB 21.) As stated above *and alleged*, Liu had access to the information necessary to make allegations sufficient for the district court to determine whether or not it could reasonably infer that a disparity existed. The problem was not that Liu had no way of getting information to support his claim. Rather, it was because he alleged flawed statistics based on a survey asking the wrong question to a non-representative population.

Next, the EEOC argues that the district court "should have stopped" once Liu "identified 'a business practice and show[ed] that it could plausibly cause a disparate impact" in a hypothetical sense—even though the statistics he alleged lent it no support. (EEOC AB 23.) But even the cases the EEOC cites reject this argument, explaining that a plaintiff must allege facts sufficient to plausibly allege a disparity. (*See e.g.*, *Mandala*, 975 F.3d at 210 ("But even at this early juncture, the statistics must plausibly suggest that the challenged practice actually has a

-64-

disparate impact."); *Reyes*, 903 F.3d at 425-26 (plaintiff must plausibly allege causation in addition to a disproportionately adverse effect on minorities); *Frappied*, 966 F.3d at 1055 (analyzing statistics to determine if disparate impact plausibly alleged).) That a practice *could* cause a disparate impact shows no more than "a sheer possibility that a defendant has acted unlawfully" and is equally consistent with the defendant's non-liability. (*Iqbal*, 556 U.S. at 678.) That is especially so because a disparate impact by itself is not actionable, but merely could lead to a claim if the plaintiff shows other facts like causation. (*See Mandala*, 975 F.3d at 207–09.)

Finally, the EEOC argues that "a plaintiff who lacks pre-discovery access to information about the employer's workforce could identify the challenged practice and point to real-world conditions suggesting that the practice will result in a disparity" and that Liu pleaded "real world information" by including allegations regarding publications and Uber's alleged prior position regarding possible discrimination in drivers' tips from riders. (EEOC AB 13, 21.) However, the cases it cites, most of which are inapposite, do not conclude that any allegations based on so-called "real world information" suffices. Instead, the cases reiterate that where statistics are relied upon to plausibly allege a disparity, the statistics must be representative and of a degree sufficient to plausibly allege a disparate impact claim.

As explained above, *Mandala* held that it is improper to simply presume statistics for a subgroup "accurately describe[s]" a larger population. (*Mandala*, 975 F.3d at 211.) *Mandala* concluded that the plaintiffs needed either to rely on population statistics that were more reflective of the employer's applicant pool or explain why national statistics regarding felony convictions are likely to be representative of that applicant pool. (*Id.* at 211-12.) This is what the district court requested—Liu could have included plausible allegations regarding the racial composition of the sample driver population or he could have included plausible allegations supporting a reasonable inference that the population who responded to the survey were representative of the total driver population. He did neither. When the district court gave Liu a chance to correct that issue, Liu doubled down on his flawed allegations.

*Reyes* and *Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F.Supp.3d 20 (D.D.C. 2017) address the causation element, not the disparity element. They nonetheless confirm that plaintiffs must do more than Liu did. In *Reyes*, the plaintiffs challenged a policy that required legal status documentation because it allegedly disproportionally impacted Latino families. (*Reyes*, 903 F.3d at 419.) *Reyes* held that where the plaintiff "relies on statistical disparity" he "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion [complained of] because of their membership in

-66-

a protected group." (*Id.* at 426.) In other words, not all statistics will suffice, particularly those that are inherently flawed.

In *Nat'l Fair Hous. All.*, it was alleged that the defendant insurer's policy of refusing to provide insurance to landlords renting to tenants who receive Housing Choice Vouchers disparately affected African-Americans and women. (*Nat'l Fair Housing Alliance*, 261 F.Supp.3d at 23-24.) The district court concluded that the plaintiff's allegations sufficiently "pleaded facts that show that voucher recipients are significantly more likely to be members of a protected class than is true for the D.C. population as a whole." (*Id.* at 33.) In doing so, the plaintiff "not only conducted a general statistical analysis, but also focused on the relevant geographic region of the District . . ." and it also "pleaded facts that show that because of the different composition of the affected population (voucher recipients) as compared to the District's population as a whole, members of a protected class are more likely to be harmed by Travelers' policy than are other individuals." (*Id.* 33-34.) Thus, unlike Liu, the plaintiff alleged statistics for a representative population that allowed the court to draw reasonable inferences supporting a disparity.

The other cases cited by the EEOC do not demonstrate error by the district court. *Boykin* confirmed that a properly alleged claim must be supported by factual allegations, not conclusions. (*Boykin*, 650 F.App'x at 44) ("[t]he complaint failed to allege facts suggesting that the closure affected a greater proportion of

disabled individuals than non-disabled . . .").) *Meyer v. Bear Rd. Assocs.*, 124 F.App'x 686 (2d Cir. 2005) predates *Iqbal* and *Twombly* and, unlike the Second Circuit's later decision in *Mandala*, it adds no value because it failed to provide any reasoning for its conclusion. (*Id.* at 688 (concluding without analysis that "[w]e find it entirely plausible that plaintiffs-appellants may be able to prove these contentions at trial.").) The court in *Carson v. Lacy*, 856 F.App'x 53 (8th Cir. 2021) and *Lee v. Herz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) similarly reached their conclusions with little to no analysis. *Carson*, 856 F.App'x at 55-56 (concurring in part and dissenting in part) ("The majority reverses the district court's ruling with one sentence of explanation . . . [with] no further rationale, and the conclusion is incorrect."); *Lee*, 330 F.R.D. at 561 (addressing alleged statistical facts showing a disparity in one sentence). Even then, the plaintiffs in those cases pleaded allegations of a statistical disparity among sample populations that the courts presumably concluded and that indisputably were representative of the groups in question. (*Carson*, 856 Fed.Appx. at 54; *Lee*, 330 F.R.D. at 561.) The same cannot be said here. (*See* 1-ER-17; 1-ER-59.)

### 2. Liu's Allegations Regarding Publications and Possible Discrimination by Riders Are Insufficient to Plausibly Allege a Significant Disparity

The EEOC argues that based on the above cases, Liu's allegations of a "challenged policy" and a "documented risk"—*i.e.*, Liu's allegations regarding

publications and Uber's purported prior position regarding possible discrimination by riders in tipping—"give[] rise to a plausible inference that minority drivers are disproportionately terminated for low passenger ratings." (EEOC AB 20.) But the above cases primarily addressed the sufficiency of statistical allegations; they do not address allegations regarding social science publications, a defendant's alleged concern of possible discrimination with respect to an unrelated policy, or similar allegations. The EEOC's theory that a mere "documented risk" can be sufficient to plausibly allege a disparity is also inconsistent with Supreme Court precedent. Here, the purported "documented risk" alleges a possibility of a disparity at best. It is "'merely consistent with' [Uber's] liability" and "'stops short of the line between possibility and plausibility of entitlement to relief.'" (*Iqbal*, 556 U.S. at 677.) One can think of many "documented risks," such as publications showing the existence of racism in the general population, but such a risk would be insufficient to plausibly allege a disparity in this case because it is merely consistent with possible discrimination, and just as consistent with no discrimination.

The EEOC does not explain how the alleged "documented risk" could have permitted the district court to "infer more than the mere possibility of misconduct" to plead a claim under *Iqbal*. (*Id.* at 679.) That is because it could not. As explained above (*see supra* at pp. 49-50), the majority of the publications Liu cited addressed vastly different contexts, do not present a statistical study, and/or provide numerous

reasons other than race as the potential cause of disparate ratings.

Just like statistics about an irrelevant population, which fail to filter out irrelevant reasons for a possible disparity, these publications do not establish a plausible disparity because they do not account for, among other things, the countless reasons why there may be a disparity in ratings, and whether ratings in other drastically different contexts can be reasonably applied to the star rating system. (*See e.g., Boykin*, 650 F.App'x at 44-45 (statistics about racial composition of neighborhoods cannot substitute for statistics about the homeless population); *Mandala*, 975 F.3d at 205, 211 (national arrest or incarceration statistics not representative of applicant pool).)

A court also could not reasonably rely on Uber's alleged concerns about discrimination by riders in tipping to infer that a disparity exists as a result of the star rating system. Many, if not virtually all, companies are concerned about possible discrimination. The EEOC has not cited any authority holding that concerns, or actions taken to address those concerns—e.g., discrimination training—are sufficient to plausibly allege that a disparity exists to plead a disparate impact claim. Such "no good deed goes unpunished" rule would deter companies' efforts to eliminate possible discrimination and broaden potential liability beyond what was intended by Title VII. As explained above, safeguards are necessary to prevent unsubstantiated disparate impact claims. (*See supra* at p. 52.) The EEOC's

proposed rule allowing general allegations of racism in the world at large, and companies concerns about racism, to suffice would undermine those safeguards, Rule 8, and the pleading standards that Rule 8 imposes on all complaints.

For all of the above reasons, Uber respectfully requests that the Court not consider issues only raised by the EEOC on appeal or alternatively, to reject the EEOC's proposed overly permissive standard that conflicts with binding precedent.

### B.     The District Court's Correctly Dismissed Liu's Disparate Treatment Claim

Liu also appeals the dismissal of his disparate treatment claim with prejudice on July 30, 2021.  (1-ER-102-103)  A disparate treatment claim requires Liu to allege facts that plausibly show that Uber "had a discriminatory intent or motive for taking a job-related action."  *Wood*, 678 F.3d at 1081 (citation omitted).  The district court dismissed Liu's disparate treatment claim because Liu failed to plead "facts giving rise to an inference that the employer *intended* to discriminate against the protected group."  (1-ER-102 (emphasis in original).)  As the court explained, under this Court's precedent, the "[m]ere awareness that a facially neutral policy was likely to have a disparate impact is not sufficient to infer intent."  (*Id.*)  Liu did not plausibly allege discriminatory intent and he admits the alleged discriminatory policy is facially neutral—Uber allegedly deactivated accounts of drivers with star ratings given by riders that fell below a minimum star rating set by Uber.  (1-ER-

127.)  Instead, he relied on the allegation that Uber was "aware that passengers are prone to discriminate in their evaluation of drivers, but Uber has continued to use th[e] [star rating] system."  (1-ER-130.)  Liu allegations are plainly insufficient under *Wood*.

In *Wood,* the plaintiff alleged a disparate treatment claim based on the City of San Diego's provision of survivor benefits that differed based on marital status because "male retirees are more likely to be married, the surviving spouse benefit has an unlawful disparate impact on female retirees."  (*Wood*, 678 F.3d at 1078.)  The plaintiff further alleged that the City adopted the policy "with knowledge of its discriminatory effects" because when the City changed the policy to comply with a Supreme Court decision, it became "aware that male employees would disproportionately benefit from the change."  (*Id.* at 81.)  Despite the employer's knowledge of the disparate *impact* of its policy, this Court affirmed the dismissal of the claim, holding that the plaintiff failed to allege a disparate treatment claim because she did not "claim that the City adopted the surviving spouse benefit *because* it would benefit men more often than women."  (*Id.*) (emphasis in original).)  Similarly, Liu did not allege that Uber used the star rating system specifically because it would benefit non-minority drivers.  Thus, the same result is required here as in *Wood*.

Liu fails to address *Wood* and instead argues that in a class action, an "illicit

motive" may be inferred "from a sufficient showing of disparity between the class members and comparably qualified members of the majority group." (AOB 46.) According to Liu, the statistical evidence he alleged regarding "a disparity in ratings-based terminations between white and non-white drivers" allowed for such an inference. (AOB 47.) But Liu's disparate treatment claim in his FAC was dismissed with prejudice on July 30, 2021, four months before Liu first alleged these statistics in his SAC (*i.e.*, results of Liu's counsel's survey) on November 26, 2021. (1-ER-102; compare 1-ER-125-141 (FAC) and 1-ER-80-98 (SAC).) Liu's argument fails because the FAC did not allege these statistics and Liu never sought leave to reallege a disparate treatment claim based on these statistics. Regardless, Liu's statistical allegations do not demonstrate a disparity for the reasons explained extensively above, and thus, even if they were alleged, they would be insufficient to plausibly plead a discriminatory intent. Liu cites *Police Officers for Equal Rts. v. City of Columbus*, 644 F.Supp.393 (S.D. Ohio 1985), but that case is inapposite. The plaintiffs in that case prevailed after *trial* because they established an adverse impact on black officers in addition to a "longstanding pattern of discrimination" that was "well documented." (*Id.* at 432–36.) The same was the case in *Worcester v. Massachusetts Commission Against Discrimination*, Civ. No. 15-1263-C, at 11–12, 15–16 (Mass. Super. Ct. Jan. 6, 2021), ADD-1 (city proved a "substantial" disparity and a history of zero minority officers being promoted for decades).

Here, Liu did not plausibly allege either a disparity or a history of discrimination.

The district court properly applied *Wood* to Liu's allegations of Uber's mere knowledge of potential discrimination without a single allegation of intentional discrimination. Its dismissal of Liu's disparate treatment claim should be affirmed.

## C.    Liu Waived Any Right to Further Amend His TAC

Liu decided to stand on his TAC before this Court like he did before the district court in choosing not to amended complaint as the district court allowed. On appeal, Liu only asks the Court to reverse the district court's dismissal of the TAC and to find that the TAC plausibly alleged claims for disparate impact and disparate treatment discrimination. (AOB 1–2, 48.) Liu did not seek a remand with instructions to allow him to amend his operative complaint and that argument is waived. (*Unified Data Services, LLC v. Federal Trade Commission*, 39 F.4th 1200, 1208 (9th Cir. 2022).) Liu also waived his right to amend by choosing not to amend his TAC and seeking an appeal instead. (*See Stevens v. Plumbers and Pipefitters Local 219*, 812 F.App'x 815, 818 (11th Cir. 2020) (By filing an appeal prior to amending his complaint, the plaintiff "elect[s] to stand" on his original complaint and "waive[s] [his] right to further amendment.").) Consequently, this Court should affirm the district court's judgment in favor of Uber.

## VIII.  CONCLUSION

Uber respectfully requests this Court affirm the dismissal of Liu's disparate

impact and disparate treatment claims and affirm judgment entered in favor of

Uber.

Dated: June 23, 2023

LITTLER MENDELSON, P.C.

*/S/ SOPHIA B. COLLINS*
Andrew M. Spurchise
Sophia Behnia Collins
Attorneys for Defendants and Appellee
Uber Technologies, Inc.

## STATEMENT OF RELATED CASES

There are no known related cases pending in the Ninth Circuit Court of

Appeals.

Dated:  June 23, 2023

LITTLER MENDELSON, P.C.

*/S/ SOPHIA B. COLLINS*

Andrew M. Spurchise
Sophia Behnia Collins
Attorneys for Defendants and Appellee
Uber Technologies, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | Nos. 22-16507, 22-16712 |

I am the attorney or self-represented party.

**This brief contains** | 15,387 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

ⓧ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☒ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Andrew Sprurchise | **Date** | June 23, 2023 |

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                               *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on June 23, 2023, I electronically filed the foregoing in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

Dated: June 23, 2023                    LITTLER MENDELSON, P.C.

*/S/ SOPHIA B. COLLINS*
Andrew M. Spurchise
Sophia Behnia Collins
Attorneys for Defendants and Appellee
Uber Technologies, Inc.