No. 22-16507; 22-16712

IN THE

# United States Court of Appeals
# for the Ninth Circuit

_____

THOMAS LIU, individually and on behalf of other similarly situated individuals, and in his capacity as Private Attorney General Representative, *Plaintiff-Appellant*,

v.

Uber Technologies, Inc., *Defendant-Appellee.*

_____

On Appeal from the United States District Court
For the Northern District of California
Case No. 20-cv-07499-VC

_____

**PLAINTIFF-APPELLANT'S PETITION FOR REHEARING EN BANC**
_____

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

INTRODUCTION AND RULE 35(B) STATEMENT ............................................1

BACKGROUND ........................................................................................3

STANDARD OF REVIEW ........................................................................10

ARGUMENT ...........................................................................................10

    I.     The Panel's Decision Departs From Longstanding
           Precedent Regarding the Pleading Requirement for a
           Claim of Disparate Impact Discrimination ........................................10

    II.    This Case Presents an Exceptionally Important Question
           of Federal Law That Will Affect Discrimination Claims
           Based on Disparate Impact Theory Throughout The
           Ninth Circuit ........................................................................................15

CONCLUSION ..........................................................................................17

CERTIFICATE OF COMPLIANCE.......................................................18

CERTIFICATE OF SERVICE ................................................................19

# TABLE OF AUTHORITIES

## Cases

Austin v. Univ. of Or.,
    925 F.3d 1133 (9th Cir. 2019) .............................................................11

Bolden-Hardge v. Office of California State Controller,
    63 F.4th 1215 (9th Cir. 2023) ...................................................... 12, 16

Cahill v. Nike, Inc.,
    2019 WL 2179575 (D. Or. Feb. 26, 2019) .........................................18

Chaidez v. Ford Motor Co.,
    937 F.3d 998 (7th Cir. 2019) ...................................................... 13, 17

Freeman v. Cty. of Sacramento Dep't of Human Assistance,
    2020 WL 2539268 (E.D. Cal. May 19, 2020) ......................................1

Gilley v. JPMorgan Chase Bank, N.A.,
    2012 WL 10424926 (S.D. Cal. Oct. 12, 2012)...............................2, 11

Houle v. Walmart Inc.,
    447 F. Supp. 3d 261 (M.D. Pa. 2020)................................................13

Lynch v. Freeman,
    817 F.2d 380 (6th Cir. 1987) .............................................................13

Mandala v. NTT Data, Inc.,
    975 F.3d 202 (2d Cir. 2020) ..............................................................13

Mata v. Illinois State Police,
    2001 WL 292804 (N.D. Ill. March 22, 2001)....................................14

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)...........................................................................12

Ramirez v. National Distillers and Chemical Corp.,
    586 F.2d 1315 (9th Cir. 1978) ...........................................................12

<u>Swierkiwicz v. Sorema N.A.</u>,
    534 U.S. 506 (2002) ........................................................................1

**Statutes**

California Fair Employment and Housing Act,
    Cal. Govt. Code § 12940 ................................................................6

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e, *et seq.* ............................................... 5, 10, 11, 16

**Other Authorities**

Alex Rosenblatt, *et al.*,
    *Discriminating Tastes: Customer Ratings as Vehicles for Bias*,
    INTELLIGENCE AND AUTONOMY (2016), available at
    https://datasociety.net/library/discriminating-tastes-customer-
    ratings-as-vehicles-for-bias ..........................................................13

Dan Adams,
    *Uber's argument against tipping: Riders have a racial bias*, THE
    BOSTON GLOBE (April 27, 2016) available at
    https://www.bostonglobe.com/business/2016/04/27/uber-resists-
    adding-tipping-its-app/BNEfLpo8dLcfC9czdcvtzI/story.html ........................4, 5

Fei Teng, *et al.*,
    CAN CUSTOMER RATINGS BE DISCRIMINATION AMPLIFIERS?
    EVIDENCE FROM A GIG ECONOMY PLATFORM (2023) (unpublished
    research report, Yale School of Management) available at
    https://insights.som.yale.edu/sites/default/files/2023-
    08/Customer_Prejudice_and_Minority_Earnings_Gap.pdf ..............................13

Michael Lynn, *et al.*,
    *Consumer racial discrimination in tipping: A replication and
    extension*, JOURNAL OF APPLIED SOCIAL PSYCHOLOGY 38(4) 1045
    (2008) available at http://scholarship.sha.cornell.edu/articles/27 ........................4

**Rules**

Fed. R. App. P. 35(a) ..............................................................10

## INTRODUCTION AND RULE 35(B) STATEMENT

Plaintiff-Appellant Thomas Liu ("Plaintiff") respectfully requests rehearing *en banc* of the panel's decision in this matter under Federal Rule of Appellate Procedure 35(b), which affirmed the District Court's dismissal of his complaint. Plaintiff's complaint pled discriminatory disparate impact against drivers of color based on Uber's use of a customer rating system to terminate drivers who do not maintain a high minimum rating. There are two reasons why this matter warrants *en banc* review.

First, the panel's opinion is flatly inconsistent with longstanding precedent within this Circuit and other federal courts establishing that the pleading standard when bringing a claim of disparate impact discrimination is lenient and flexible. Federal courts have made abundantly clear that plaintiffs in discrimination cases are not required to make out a prima facie case of discrimination in order to survive the pleading stage. <u>See</u>, <u>e.g.</u>, <u>Freeman v. Cty. of Sacramento Dep't of Human Assistance</u>, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) ("[A] plaintiff need not plead each element of a prima facie discrimination case.") (citing <u>Swierkiwicz v. Sorema N.A.</u>, 534 U.S. 506, 5114–15 (2002)). All that is required are some basic allegations "sufficient to raise an **inference or presumption** of discrimination." <u>Gilley v. JPMorgan Chase Bank, N.A.</u>, 2012 WL 10424926, at *3 (S.D. Cal. Oct. 12, 2012) (internal citations omitted). In line with that lenient

standard, courts have made clear that plaintiffs bringing disparate impact claims need not present statistical evidence of an actual disparity *in the complaint*, but that, in the rare instances in which they are able to do so because they happen to have access to relevant data, their statistical allegations should not be subject to the same level of scrutiny as would apply following discovery.

The District Court departed from this broad consensus by effectively ordering Plaintiff to present statistical evidence of a disparity *in his complaint* (even though Plaintiff had already met his burden of raising an **inference or presumption** of discrimination by plausibly pleading both that he himself had been subject to discrimination due to Uber's customer rating system *and* that academic literature had established that customer rating systems such as that used by Uber generally have a disparate impact on drivers of color), and then scrutinizing Plaintiff's survey data (presented in the complaint) under an improperly heightened standard of review.

The panel's opinion affirming the District Court's incredibly heightened burden placed on a plaintiff bringing a disparate impact claim is plainly inconsistent with the weight of authority in this Circuit and in other federal courts across the country.

Second, this case raises a question of exceptional importance regarding the applicable standard to be applied by courts in determining whether a plaintiff has

adequately pled discrimination under a disparate impact theory. If this Court (like the panel) were to affirm the District Court's repeated rejection of Plaintiff's pleadings — despite his ever-more-detailed allegations of disparate impact based on: (a) statistical analysis of a survey of approximately 20,000 Uber drivers; (b) citations to academic literature; (c) Uber's own statements; and (d) his personal experience — it will effectively create a new, greatly heightened pleading standard whereby plaintiffs bringing claims for disparate impact discrimination are required to provide statistically significant *proof* demonstrating an actual disparity *to survive a motion to dismiss*. That will make it prohibitively difficult for plaintiffs to plead disparate impact claims, thereby undermining the remedial purpose of federal and state anti-discrimination statutes.

For those reasons, the Court should grant a rehearing *en banc* and reverse the panel's decision.

## BACKGROUND

Uber is a San Francisco-based transportation company that engages hundreds of thousands of drivers across the country to transport riders. Excerpts of Record ("ER") 40, ¶ 9. To evaluate its drivers, Uber uses a passenger rating system, called the "star rating system" whereby passengers rate their driver on a scale of one to five after each ride. ER-40, ¶ 11. Drivers must maintain a minimum

rating, which is set by Uber, to continue working for Uber, or face automatic termination. ER-40-41, ¶¶ 12-14.

As set forth in Plaintiff's complaint, social science research has shown that reliance on customer evaluations of workers, *including* Uber's star rating system, frequently leads to discriminatory impact on racial minorities. ER-41-44, ¶¶ 18-22. ER-42, ¶ 21. Uber has long known that its reliance on such a system to decide which drivers to terminate is racially discriminatory, as Uber has acknowledged that its customers frequently discriminate. ER-41, ¶ 18. In the past, Uber tried to justify its refusal to add a tipping feature on its app, based on its assertion that passengers discriminate against racial minorities.[1] ER-41, ¶ 18. In response to this argument, drivers also raised concerns that, under the same reasoning, "customer bias could affect their ratings in Uber's zero-to-five-star ranking system, which the

---

[1]    Uber professed concern that allowing passengers to tip would therefore discriminate against minority drivers in their wages. See Dan Adams, *Uber's argument against tipping: Riders have a racial bias*, THE BOSTON GLOBE (April 27, 2016) available at https://www.bostonglobe.com/business/2016/04/27/uber-resists-adding-tipping-its-app/BNEfLpo8dLcfC9czdcvtzI/story.html. In support of its position, Uber relied upon a 2008 study by two Cornell University professors that found "that consumers of both races discriminate against black service providers by tipping them less…." Michael Lynn, *et al.*, *Consumer racial discrimination in tipping: A replication and extension*, JOURNAL OF APPLIED SOCIAL PSYCHOLOGY 38(4) 1045 (2008) available at http://scholarship.sha.cornell.edu/articles/27. ER-41, ¶ 18 n.2.

company uses to identify, retrain, and sometimes 'deactivate' poor drivers."[2] ER-42, ¶ 19.

Plaintiff is an Asian male who was terminated when his average star rating fell below 4.6 (on a 1-to-5 scale, with 5 being the highest rating). He filed this class action lawsuit in the Northern District of California on October 26, 2020, alleging that Uber's use of its rating system to determine driver terminations constitutes disparate impact discrimination and intentional discrimination on the basis of race in violation of Title VII. ER-144-54.

Uber proceeded to file multiple motions to dismiss, and the District Court granted each motion, allowing Plaintiff each time to amend the complaint. But in each decision, the Court, increasingly scrutinizing each iteration of the complaint, continued to move the goalposts, setting the bar higher and higher for Plaintiff to state a claim of discrimination.

In his original Complaint, Plaintiff succinctly described Uber's customer rating system and how Uber used it to terminate drivers and plausibly alleged (based upon Uber's acknowledgments that customers discriminate, the existence of social science research regarding customer discrimination, and his own experience with customers appearing to act in a discriminatory way toward him) that the

---

[2]     Adams, *Uber's argument against tipping: Riders have a racial bias*, supra n.1.

system had a racially discriminatory impact on minority drivers. The District Court granted Uber's motion to dismiss for failure to state a claim with leave to amend, stating that the Complaint was too "sparse" and highlighting that the Complaint only "alluded" generally to social science research supporting his allegations, without "cit[ing] to or describe[ing] any research findings or other facts supporting the assertion that drivers of color are disproportionately harmed by the customer ratings system." ER-142.

In response, Plaintiff filed a First Amended Complaint, which included prolific citations to and descriptions of social science research "that employers' reliance on customer evaluation systems often leads to discriminatory impact on racial minorities." ER-128-130, ¶¶ 17-21. Plaintiff also cited to news reports and academic papers discussing racial bias in Uber's star rating system in particular. ER-128-130, ¶¶ 17-21. Plaintiff's First Amended Complaint also added a claim for disparate impact discrimination and intentional discrimination under the California Fair Employment and Housing Act, Cal. Govt. Code § 12940. ER-137-138, ¶¶ 34-35.

Uber again moved to dismiss for failure to state a claim, which the District Court granted after finding that Plaintiff had failed to plausibly allege a disparity in fact. ER-99-100. The District Court instructed Plaintiff to "make a more sophisticated effort at the front end to develop a plausible factual basis in support

6

of his assertion that terminations at Uber occur on a racially disparate basis" and signaled that additional data were necessary. ER-101. The District Court also dismissed Plaintiff's disparate treatment claims with prejudice. ER-102.

Plaintiff's counsel then performed their own survey and collected actual data on driver terminations, the results of which were put into a Second Amended Complaint. ER-80-98. Plaintiff's counsel sent the survey by electronic mail to approximately 20,000 Uber drivers (who are clients of Plaintiff's counsel), including drivers who both *had* and *had not* been deactivated. ER-44-45, ¶¶ 25-26, n.4. The survey asked whether they had been deactivated by Uber based upon their star ratings and asked them to identify their race. ER-44-45, ¶¶ 25-26. In response, 4,093 Uber drivers responded, resulting in the following data: 17.4% of white respondents indicated that they had been deactivated by Uber based on star ratings; in contrast, 24.6% of Asian respondents, 24.1% of Black respondents, and 24.9% of respondents who identified their race as "Other" than the choices provided indicated that they had been deactivated by Uber based on star ratings.[3] ER-45-46, ¶¶ 26-27. Further, Plaintiff's expert found that the results were "highly statistically

---

[3]      The Complaint explained that only 16.9% identifying as "Latinx" indicated that they had been deactivated based on star ratings; however, a large number of respondents who checked "Other" on the race question self-identified as "Hispanic," "Latino," "Mexican American," or other identities that may be considered "Latinx" (thus showing they did not identify themselves as "Latinx," even though they were intended to fall within that category). ER-45-46, ¶¶ 26-27, n.5.

significant" and that "the chance of race having played no role in drivers being deactivated based on their star ratings is 2 in 10,000 (.0002 probability) for Asian respondents, less than 1 in 10,000 (<.0001 probability) for Black respondents, and 3 in 10,000 (.0003 probability) for respondents who identified their race as 'Other'." ER-88-89, ¶¶ 28-30.

Uber again filed a motion to dismiss the Second Amended Complaint, ER-61-79. The District Court granted that motion, this time based on its disagreement with how Plaintiff's survey had been conducted. The Court took issue with: (1) "the survey methodology [] use[d] the wrong denominator", by using survey results from "drivers who identify as being terminated and not by a sample of Uber's total driver population"; and (2) the survey caused confusion for some respondents in identifying their race, because it used the term "Latinx".[4] ER-58-59. The Court again dismissed the disparate impact claims with leave to amend. ER-60.

---

[4]     The District Court wrote: "By asking drivers whether they identified as 'Latinx,' Liu's counsel likely skewed survey results because Latino drivers may not have known what the term 'Latinx' means." ER-59. Plaintiff had already identified this issue as one to be corrected when conducting analysis of actual data from Uber during the discovery process, ER-87, ¶ 27 n.4. As Plaintiff repeatedly urged the District Court to recognize, this survey did not analyze the final data upon which this case would rise or fall; it was simply conducted on a data set that Plaintiff's counsel just happened to have access to prior to discovery (based on counsel's representing a large number of Uber drivers), so as to provide some of the "upfront legwork" that the District Court directed Plaintiff to do before unlocking the power of discovery in the case.

Plaintiff thereafter filed yet another version of the complaint, a Third Amended Complaint, in which Plaintiff answered the District Court's concerns by clarifying that the survey *did* in fact use "a sample of Uber's total driver population" and collected additional data to confirming that the survey respondents included an almost even mix of drivers who had and who had not been deactivated. ER-45, ¶ 26 n.4.

However, the District Court again granted Uber's next motion to dismiss the complaint, claiming that Plaintiff's counsel's additional data "ma[de] Liu's complaint worse, not better" because "[t]he fact that a number of Uber drivers misunderstood this confusingly worded survey makes it even less useful." ER-4.

Rather than continue this fruitless exercise of being asked to amend his complaint multiple times so as to all but *prove his case at the pleadings stage* (over the course of two years) without the benefit of *any* discovery, Plaintiff filed a notice of appeal. ER-155.

Following briefing and argument, the panel affirmed the District Court's decision in full (attached here as Exhibit A). The panel declined to address Plaintiff's arguments that the District Court improperly applied a heightened pleading standard. See Ex. A at 3 n.1. Instead, like the District Court, the panel found that Plaintiff had failed to plead sufficient facts to raise a plausible inference that Uber's practice of using the star rating system to terminate drivers is causally

related to a racial disparity in driver terminations. <u>See id.</u> at 4-10. The panel also found that Plaintiff had failed to plausibly allege that Uber possessed the requisite intent to support a claim of disparate treatment discrimination. <u>See id.</u> at 11.

**STANDARD OF REVIEW**

Rehearing *en banc* may be granted "if consideration is necessary to secure or maintain uniformity of the court's decisions" or if the "proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a).

**ARGUMENT**

**I.** **<u>The Panel's Decision Departs From Longstanding Precedent Regarding the Pleading Requirement for a Claim of Disparate Impact Discrimination</u>**

Rehearing *en banc* is warranted first and foremost because the panel's decision departs from well-established Ninth Circuit precedent emphasizing that a plaintiff's burden when pleading disparate impact discrimination is not onerous. Under Title VII "[t]he plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." <u>Gilley</u>, 2012 WL 10424926 at *3 (internal citations omitted). In other words, the plaintiff is not required to make out a prima facie case of discrimination at the pleading stage. <u>See</u> <u>Austin v. Univ. of Or.</u>, 925 F.3d 1133, 1136–37 (9th Cir. 2019) (declining to adopt Second Circuit's approach of applying <u>McDonnell Douglas</u> presumption at pleading stage). The pleading standard is lenient for good reason: there is broad consensus within this

10

Circuit that discrimination claims should be liberally construed in the interest of effectuating the remedial purpose of anti-discrimination statutes. See Ramirez v. National Distillers and Chemical Corp., 586 F.2d 1315, 1321 (9th Cir. 1978) ("In keeping with the remedial goals of the statute, we have repeatedly held that the statute itself, the procedural framework, and the pleadings must be liberally construed in favor of those who are alleged victims of discrimination.").

Thus, there is no requirement that a plaintiff present statistical evidence to carry his or her burden of pleading that a challenged employment practice has a disparate impact on a protected class. See, e.g., Bolden-Hardge v. Office of California State Controller, 63 F.4th 1215, 1227 (9th Cir. 2023) ("[S]tatistics are not strictly necessary.") (internal citation omitted); see also Lynch v. Freeman, 817 F.2d 380, 387–88 (6th Cir. 1987) ("While Title VII plaintiffs may be able to prove some disparate impact cases by statistics, that is not the only avenue available."); Houle v. Walmart Inc., 447 F. Supp. 3d 261, 278 (M.D. Pa. 2020) ("[C]ourts have repeatedly held that defendants are wrong to insist that a disparate impact complaint must allege percentages, statistics, or data.") (internal citations and quotation marks omitted).

Where plaintiffs *do*, however, rely on statistical evidence to plead their case, courts afford them broad leeway to do so. See, e.g., Chaidez v. Ford Motor Co., 937 F.3d 998, 1007 (7th Cir. 2019) ("Disparate-impact plaintiffs are permitted to

rely on a variety of statistical methods and comparisons to support their claims" and "[a]t the pleading stage, some basic allegations of this sort will suffice.") (internal citations omitted); see also Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020) ("[W]e do not require a plaintiff to prove in detail the methodological soundness of her statistical assessment to survive a motion to dismiss."). This, of course, makes sense: individual plaintiffs rarely, if ever, have access to statistical data from their employers. See, e.g., Mata v. Illinois State Police, 2001 WL 292804, at *4 (N.D. Ill. March 22, 2001) ("[T]here is no reason Mata would have this kind of statistical evidence yet. … I must look at the complaint with deference to the plaintiff, and I cannot require him to prove his case now.").

The panel's opinion affirming the District Court's decision flies in the face of this precedent. First, the panel gave short shrift to Plaintiff's allegations regarding his personal experience of discriminatory treatment by customers, brushing them aside as unsupportive and "bare." Ex. A at 4-5. But Plaintiff's allegations regarding Uber customers canceling rides and asking "where he was from in an unfriendly way" support his discrimination claim because they support his claim that Uber passengers harbor racial bias in general. That racial bias may manifest itself in a number of ways, including canceling rides, subjecting Plaintiff to microaggressions, or giving him a lower rating than they would a driver who is

not a racial minority. These allegations, standing alone, may not be sufficient to ultimately meet Plaintiff's burden to win his case, but when combined with citations to academic literature demonstrating that consumer-sourced rating systems are highly likely to be influenced by customer bias, they render plausible Plaintiff's allegations that Uber's policy of terminating drivers based on customer ratings disproportionately impacts minority drivers.

Second, and relatedly, the panel found that Plaintiff's extensive citations to academic literature and media reports regarding the discriminatory effect of customer ratings systems "lack[ed] sufficient data concerning relevant actual conditions to provide a non-speculative basis for plausibly inferring that any such significant disparity is actually occurring with respect to Uber." Ex. A at 5. But Plaintiff cited, among other studies, reports analyzing Uber's platform and those of other rideshare platforms as case studies for demonstrating how consumer-sourced ratings systems are likely to be influenced by racial bias.[5] These sources in and of themselves are sufficient to support a plausible inference that Uber's star rating

---

[5] See, e.g., Alex Rosenblatt, *et al.*, *Discriminating Tastes: Customer Ratings as Vehicles for Bias*, INTELLIGENCE AND AUTONOMY (2016), available at https://datasociety.net/library/discriminating-tastes-customer-ratings-as-vehicles-for-bias; Fei Teng, *et al.*, CAN CUSTOMER RATINGS BE DISCRIMINATION AMPLIFIERS? EVIDENCE FROM A GIG ECONOMY PLATFORM (2023) (unpublished research report, Yale School of Management) available at https://insights.som.yale.edu/sites/default/files/2023-08/Customer_Prejudice_and_Minority_Earnings_Gap.pdf.

system has resulted in a significant racial disparity affecting driver terminations.
See Bolden-Hardge, 63 F.4th at 1228 (plaintiff's identification of real-world
condition that Jehovah's Witnesses *generally* "believe that their faith forbids them
from swearing primary allegiance to any human government" allowed court to
reasonably infer that *specific* employer's practice of requiring employees to swear
oath of loyalty disparately impacted Jehovah Witnesses employees).

Finally, the panel made the same mistake as that of the District Court
regarding Plaintiff's use of statistics. While the panel acknowledges that "statistics
are not strictly necessary" to plead a disparate impact claim, it devoted the majority
of the opinion to scrutinizing Plaintiff's survey, using the same improper
heightened pleading standard as that of the District Court. Ex. A at 6 n.2. In doing
so, the panel failed to acknowledge that Plaintiff only conducted this survey in the
first place because the District Court essentially *ordered* him to provide some data
demonstrating the existence of a disparity-in-fact, which is plainly improper.
Plaintiff's statistical showings (evidence which is typically reserved until after the
discovery process is complete) were not necessary *to plead his case*, but he went
above and beyond what is required at the pleading stage. Given the broad leeway
that courts afford plaintiffs alleging statistical evidence, this should have sufficed
to shield Plaintiff's survey-based allegations from the undue scrutiny to which the
panel and District Court subjected them. See, e.g., Chaidez, 937 F.3d at 1007 ("At

the pleading stage, some basic [statistical allegations] will suffice.").

## II.   This Case Presents an Exceptionally Important Question of Federal Law That Will Affect Discrimination Claims Based on Disparate Impact Theory Throughout The Ninth Circuit

Review *en banc* is also warranted because this case presents an exceptionally important question of federal (and state) law: what is a plaintiff in the Ninth Circuit required to plead in order to plausibly allege a case of disparate impact discrimination?[6] As discussed above, the standard for pleading a claim of disparate impact is widely regarded by courts across the country as a lenient and flexible one.

In this case, Plaintiff's allegations went far beyond what that standard requires. Over the course of four iterative complaints, Plaintiff provided increasingly detailed quantitative and qualitative evidence supporting his allegations that Uber's policy of terminating drivers based on passenger reviews has a disproportionate impact on minority drivers. Indeed, although plaintiffs are

---

[6]     This case also presents an important question of law regarding the standard for pleading a disparate treatment claim. The panel affirmed the District Court's dismissal of Plaintiff's disparate treatment claim, finding that Plaintiff failed to raise a plausible inference of intent based on Uber's continued use of a practice – the star rating system – that it demonstrably *knew* had a discriminatory effect. See Ex. A at 11. An employer's intentional continued use of a practice that it knows to have a discriminatory impact should be sufficient to allege intentional disparate treatment discrimination. See, e.g., Cahill v. Nike, Inc., 2019 WL 2179575, at *8 n.5 (D. Or. Feb. 26, 2019) (court could draw reasonable inference of discriminatory motive based on allegations that defendant knew its practices had discriminatory impact).

rarely able to allege statistical disparities because they do not have access to data prior to commencing a lawsuit, here Plaintiff was able to include in his complaint the results of a survey of *thousands* of Uber drivers (simply because his counsel happened to have access to such data) inquiring into each driver's race and whether the driver was terminated based on their rating, if the driver was in fact terminated.

In repeatedly dismissing Plaintiff's complaint, the District Court departed from the lenient pleading standard under Title VII and California law. In effect, the District Court required Plaintiff to make out a prima facie case of disparate impact discrimination by requiring him to provide, at the pleading stage, demographic and statistical information that would normally only be available through discovery.

The implications of the panel's endorsement of that decision are far-reaching. If the overly stringent pleading standard utilized by the District Court remains in place and were adopted, this Court will have significantly raised the bar for plaintiffs bringing discrimination cases under a disparate impact theory. In most instances, it would be all but impossible for a litigant to state a claim for disparate impact discrimination because plaintiffs rarely have access to the information necessary to *prove* the disparity statistically at the pleading stage. Employers would thus be able to insulate themselves from liability because of the asymmetry in access to data, and employees would be all but foreclosed from ever being able to challenge an employment practice that has a disparate impact.

The adoption of such a narrow standard would result in the dismissal of meritorious disparate impact claims before plaintiffs are able to conduct discovery and actually access the employer data necessary to prove the merits of their claims, thereby undermining the remedial purpose of federal and state anti-discrimination statutes. The Court should grant rehearing *en banc* to avoid this disastrous result.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court grant this Petition for Rehearing *En Banc*.

Dated: July 8, 2024                              Respectfully submitted,

                                                 THOMAS LIU, individually and on
                                                 behalf of other similarly situated
                                                 individuals,

                                                 By his attorney,

                                                 /s/ Shannon Liss-Riordan_____
                                                 Shannon Liss-Riordan
                                                 LICHTEN & LISS-RIORDAN, P.C.

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this document contains 3,882 words.

This document complies with the format, typeface, and type style requirements of Fed. R. App. P. 32(a)(4)-(6) because this document has been prepared in a proportionally spaced typeface using fourteen-point Times New Roman.

Dated: July 8, 2024

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com

*Attorney for Plaintiff-Appellant*
*Thomas Liu*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2024, I caused the foregoing document to be filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using CM/ECF system, which will provide notification of this filing to all counsel of record.

Dated: July 8, 2024

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com

*Attorney for Plaintiff-Appellant*
*Thomas Liu*

19